[Civ. No. 44153. Second Dist., Div. Two. June 11, 1975.]

LEON COOPER, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents;
PIERCE SHERMAN, Real Party in Interest and Appellant.

**COUNSEL**

Armstrong & Lloyd, Orville A. Armstrong and James E. Biava for Real Party in Interest and Appellant.

David L. Caplan for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

## OPINION

**COMPTON, J.**—This is an appeal from a judgment in an action for declaratory relief decreeing that a certain Los Angeles County zoning ordinance is void and of no legal effect.

Pierce Sherman who is the real party in interest owns 11.32 acres of land on the north side of the Pacific Coast Highway within the community of Malibu which property was previously zoned for residential use. On January 5, 1971, he applied for, and effective July 15, 1971, the Board of Supervisors of Los Angeles, by ordinance, approved the change in the zoning of the property to recreational and resort use.

On September 7, 1971, plaintiff Cooper, a landowner and resident in the vicinity of the Sherman property filed a complaint for declaratory relief seeking to have the zone-change ordinance declared void and of no effect on the grounds that it deprived him of the beneficial enjoyment of his property, was arbitrary, unreasonable and unconstitutional. The complaint did not raise any issues with respect to the California Environmental Quality Act of 1970 (CEQA) (Pub. Resources Code, § 21000 et seq.) which had been adopted in 1970.

While this action was pending the California Supreme Court on September 21, 1972, filed its decision in *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], holding the requirements of CEQA applied to private developments undertaken by authority of a permit or license from a governmental body. As a consequence of this decision Cooper amended his complaint on October 12, 1972, to allege noncompliance with CEQA. Such noncompliance is admitted since no environmental impact report (EIR) was prepared prior to the change in zoning.

Plaintiff's reaction to *Friends of Mammoth, supra,* was followed by the Legislature's response. Since prior to the *Friends of Mammoth* decision it had been generally believed that an EIR was required only for projects which were publicly performed or funded and since the court in that decision had not limited it to a prospective application, the Legislature undertook on December 5, 1972, to amend CEQA so as to ameliorate

certain envisioned hardships that might result. These amendments are contained in Public Resources Code sections 21169[1] and 21170.[2]

Public Resources Code section 21169 initially validates all projects "undertaken, carried out or approved" prior to December 5, 1972, even though there was no compliance with the requirements of CEQA.

An exception to this blanket validation was set forth in Public Resources Code section 21170 for projects, the legality of which were being challenged in pending litigation raising the issue of compliance with CEQA. In excepting such challenged projects, however, the Legislature provided that the validation of section 21169 *would* apply to projects where "substantial construction has been performed and substantial liabilities for construction and necessary materials have been incurred."

Plaintiff here, though somewhat belatedly, by his amended complaint, invoked the exception to section 21170 so that the issue for the trial court was whether Sherman, prior to plaintiff's challenge, had embarked on his proposed project to the extent that he was protected by the saving provisions of section 21170.

---

[1]Public Resources Code section 21169 provides: "Any project defined in subdivision (c) of Section 21065 undertaken, carried out or approved on or before the effective date of this section and the issuance by any public agency of any lease, permit, license, certificate or other entitlement for use executed or issued on or before the effective date of this section notwithstanding a failure to comply with this division, if otherwise legal and valid, is hereby confirmed, validated and declared legally effective. Any project undertaken by a person which was supported in whole or in part through contracts with one or more public agencies on or before the effective date of this section, notwithstanding a failure to comply with this division, if otherwise legal and valid, is hereby confirmed, validated and declared legally effective."

[2]Public Resources Code section 21170 provides: "(a) Section 21169 shall not operate to confirm, validate or give legal effect to any project the legality of which was being contested in a judicial proceeding in which proceeding the pleadings, prior to the effective date of this section, alleged facts constituting a cause of action for, or raised the issue of, a violation of this division and which was pending and undetermined on the effective date of this section; provided, however, that Section 21169 shall operate to confirm, validate or give legal effect to any project to which this subdivision applies if, prior to the commencement of judicial proceedings and in good faith and in reliance upon the issuance by a public agency of any lease, permit, license, certificate or other entitlement for use, substantial construction has been performed and substantial liabilities for construction and necessary materials have been incurred. (b) Section 21169 shall not operate to confirm, validate or give legal effect to any project which had been determined in any judicial proceeding, on or before the effective date of this section to be illegal, void or ineffective because of noncompliance with this division."

The trial court in a minute order of May 14, 1973, stated: "The Court finds for the defendants and real party in interest on the original complaint (unamended). On the amendment to complaint, the Court finds for the plaintiff." In so doing, the trial court clearly rejected all of plaintiff's attacks on the ordinance save the failure to comply with CEQA.

On the latter issue certain findings and conclusions of the court were significant in their language and we set them out verbatim.

### FINDINGS

"Prior to October 12, 1972, the Real Parties in Interest had performed construction, in good faith and in reliance upon the issuance of Zoning Ordinance 10289. The construction work performed by the Real Parties in Interest prior to October 12, 1972, in good faith and in reliance upon the issuance of Zoning Ordinance 10289 *was not substantial when viewed in relation to the overall project,* and no substantial liabilities for necessary materials were so incurred. Prior to October 12, 1972, the Real Parties in Interest did incur substantial liabilities for construction in good faith and in reliance upon the issuance of Zoning Ordinance 10289 . . . ."

### CONCLUSIONS OF LAW ·

"*Public Resources Code Section 21170 is clear and requires in the conjunctive substantial liabilities for construction, and substantial liabilities for necessary materials, and substantial construction.* The provisions of Sections 21169 and 21170 of the Public Resources Code do not operate to confirm, validate and declare legally effective Zoning Ordinance 10289 because, although the Real Parties in Interest did incur the substantial liabilities for construction, they did not also incur substantial liabilities for necessary materials nor did they perform substantial construction, and the requirements of Section 21170 must be read in the conjunctive." (Italics added.)

This appeal is on the judgment roll, no reporter's transcript has been provided, thus we must assume that the evidence supports the findings. The findings and conclusions, however, indicate that the trial court was proceeding on the basis of an incorrect interpretation of the language of section 21170 of the Public Resources Code and thus do not support the judgment. This is an error which is manifest on the face of the record and which requires reversal. (See rule 52, Cal. Rules of Court;

*Stauffacher* v. *Stauffacher,* 227 Cal.App.2d 735 [39 Cal.Rptr. 31]; *Alkus* v. *Johnson-Pacific Co.,* 80 Cal.App.2d 1 [181 P.2d 72].)

We need not dwell long on Sherman's contention that Public Resources Code section 21170 created constitutionally defective classification of projects since that contention essentially rests on the trial court's interpretation of the statute which we have concluded was erroneous. In our opinion, Sherman has correctly contended that the trial court imposed too many conditions upon the qualification of his project for validation under the provisions of sections 21169 and 21170.

As we interpret those sections they create three classifications of projects, (1) those which were not under legal attack prior to December 5, 1972, (2) those which were under legal attack prior to December 5, 1972, but substantial detriment would result if not validated, and (3) those under legal attack prior to December 5, 1972, and no substantial detriment would result from invalidation. Projects under classification (1) and (2) are validated—those under classification (3) are not.

Clearly such a classification would pass constitutional muster. A legislative act is presumed to be constitutional and any doubts must be resolved in favor of its validity. (*Bowker* v. *Baker,* 73 Cal.App.2d 653 [167 P.2d 256].)

The Legislature may make reasonable classifications of activities and enact special legislation based upon a legitimate state interest. Otherwise stated, classifications must have a reasonable basis on which to stand and must be natural rather than arbitrary in origin. (*Gulf etc. Ry. Co.* v. *Ellis,* 165 U.S. 150 [41 L.Ed. 666, 17 S.Ct. 255]; *Brown* v. *Merlo,* 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212].)

The trial court, as evidenced by its findings and conclusions, interpreted the language of section 21170 of the Public Resources Code as requiring for the validation of a project which was subject to pending litigation (1) construction which was substantial in relation to the size of the overall project, *and* (2) the incurring of substantial liabilities for construction, *and* (3) the incurring of substantial liabilities for necessary materials.

We are here dealing with remedial legislation clearly intended to relieve a builder from hardship not of his own making. (*Friends of Lake Arrowhead* v. *Board of Supervisors,* 38 Cal.App.3d 497 [113 Cal.Rptr.

539]; *Pacific Palisades Property Owners Assn.* v. *City of Los Angeles,* 42 Cal.App.3d 781 [117 Cal.Rptr. 138].) Such remedial legislation should be liberally construed in favor of the persons sought to be benefited thereby.

"Substantial" is defined in Black's Law Dictionary (4th ed.) as "Of real worth and importance; of considerable value; valuable. . . . Something worth while as distinguished from something without value or merely nominal." Webster's New World Dictionary (2d ed.) defines the word as "considerable; ample; large; of considerable worth or value..."

▉ Thus "substantial" has connotations of both quantity and comparison and we are of the opinion that the Legislature intended that either be appropriately applied. In the case of a relatively small project comparing the amount of construction and liability to the total would be an appropriate test of substantiality. In other words, if a large or important part of the project had already been completed or a large percentage of the liability incurred, the project would be validated. On the other hand, construction or liability which was quantitatively substantial would meet the statutory requirement regardless of the fact that in terms of a large project it might not constitute a substantial percentage by comparison.

In other words, for example, $100,000 in construction or liability is substantial by any standard yet on a $1 million project it would constitute only 10 percent while on a $200,000 project it would constitute 50 percent. A comparison test under such circumstances would be inappropriate in achieving the intent of the statute.

Nor do we think that the phrase "substantial liabilities for construction and necessary materials have been incurred" was intended to be in the conjunctive. It is a unified clause which should be read as a collective singular.

▉ Public Resources Code sections 21169 and 21170 in part constitute a codification of the doctrine of "vested rights," which doctrine has been recognized as permitting a landowner to complete a project in the face of a new law purporting to prohibit the development of the project where the landowner, in reliance upon governmental action, has in good faith suffered substantial detriment thereby acquiring a "vested right" to proceed to develop the property. (*Dobbins* v. *Los Angeles,* 195 U.S. 223 [49 L.Ed. 169, 25 S.Ct. 18]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara,* 85

Cal.App.2d 776 [194 P.2d 148]; *Kissinger* v. *City of Los Angeles,* 161 Cal.App.2d 454 [327 P.2d 10]; also see *Anderson* v. *City Council,* 229 Cal.App.2d 79 [40 Cal.Rptr. 41]; *Spindler Realty Corp.* v. *Monning,* 243 Cal.App.2d 255 [53 Cal.Rptr. 7].)

Public Resources Code section 27404, which is a part of the newly enacted California Coastal Zone Conservation Plan, is entitled "Vested Rights" and exempts from certain permit requirements of that act persons who, prior to the effective date of the act, had in good faith "commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor." This statute is in the conjunctive and contains almost the exact same wording as Public Resources Code section 21170.

In *San Diego Coast Regional Com.* v. *See The Sea, Limited,* 9 Cal.3d 888, at page 893 [109 Cal.Rptr. 377, 513 P.2d 129], the quoted language from section 27404 of the Public Resources Code was interpreted to cover persons who, prior to the effective date of the act, had engaged in substantial lawful work and incurred substantial liabilities, ". . . for example, those who acted in reliance on a building permit obtained prior to the effective date of the act, and demolished structures or incurred substantial expenses and liabilities preparatory to construction." (Also see *Environmental Coalition of Orange County, Inc.* v. *AVCO Community Developers, Inc.,* 40 Cal.App.3d 513 [115 Cal.Rptr. 59].) Such interpretation would apply with equal force to the language of Public Resources Code section 21170.

In *Pacific Palisades Property Owners Assn.* v. *City of Los Angeles,* 42 Cal.App.3d 781, at page 788 [117 Cal.Rptr. 138], Public Resources Code section 21170 was similarly interpreted when it was held that ". . . expenditure and obligation for substantial sums satisfies the requirement of Public Resources Code section 21170 for application of the relief provisions of section 21169 despite the intervention of a lawsuit challenging the project." There the evidence was that the builder had expended and become obligated to expend approximately $400,000 for demolition of an existing building and for excavation both of which were part of and necessary to the construction of the project. The court in both *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* and *Pacific Palisades Property Owners Assn.* v. *City of Los Angeles, supra,* viewed demolition and excavation as "construction."

Since the findings demonstrate that the trial court was proceeding under an erroneous interpretation of Public Resources Code sections

21169 and 21170, and since these findings do not set out the magnitude of the construction that was accomplished or the liability incurred, we must reverse.

For the guidance of the trial court we make an additional observation concerning the findings. The trial court in finding that substantial liability had been incurred specified that one of the items of liability was increased property tax liability attributable to the rezoning. We are of the opinion that such a liability does not come within the statutory requirement that incurred liability be for "construction and necessary materials."

The judgment is reversed and the matter is remanded to the trial court to make new and more specific findings in light of our opinion and to enter judgment based on those findings.

Fleming, Acting P. J., and Beach, J., concurred.