[Civ. No. 49246. Second Dist., Div. Five. May 4, 1977.]

LEON COOPER, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents;
PIERCE SHERMAN, Real Party in Interest and Appellant.

COUNSEL

James E. Biava, Macdonald, Halsted & Laybourne, Orville A. Armstrong and Nancy E. Spero for Real Party in Interest and Appellant.

Trabish & Caplan and David L. Caplan for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

OPINION

**STEPHENS, J.**—This is the second appeal from a declaratory judgment of the Superior Court of Los Angeles County taken by appellant and real party in interest. It centers around an interpretation and application of section 21170 of the Public Resources Code.[1] The first appeal resulted in a reversal and a remand of the controversy to the trial court with instructions that the trial court make more specific findings. The opinion is entitled *Cooper* v. *County of Los Angeles* and is reported at 49 Cal.App.3d 34 [122 Cal.Rptr. 464]. On the subsequent remand, the trial court prepared new findings of law and fact, and once again entered judgment for respondent. On this present appeal, the real party in interest asserts that the trial court, on remand, disregarded the law as interpreted by the Court of Appeal in its opinion. He seeks relief accordingly.

FACTS

Pierce Sherman, the appellant and real party in interest, is the owner of certain real property located near the Pacific Coast Highway within the community of Malibu. On January 5, 1971, he filed an application

---

[1]Section 21170 is contained in chapter 6, of division 13 of the Public Resources Code, and in pertinent part provides as follows: "(a) Section 21169 shall not operate to confirm, validate or give legal effect to any project the legality of which was being contested in a judicial proceeding in which proceeding the pleadings prior to the effective date of this section, alleged facts constituting a cause of action for, or raised the issue of, a violation of this division and which was pending and undetermined on the effective date of this section; provided, however, that Section 21169 shall operate to confirm, validate or give legal effect to any project to which this subdivision applies if, prior to the commencement of judicial proceedings and in good faith and in reliance upon the issuance by a public agency of any lease, permit, license, certificate or other entitlement for use, substantial construction has been performed and substantial liabilities for construction and necessary materials have been incurred."

with the Board of Supervisors of Los Angeles to have the above property rezoned from residential use to recreational and resort use. The board of supervisors approved said application by ordinance which became effective on July 15, 1971 (Zoning Ordinance 10289). At the time, the zoning change was all that was necessary for Sherman to be in a position to lawfully proceed with his planned construction of a recreational complex which included a hotel, theatre house, restaurant, bar, and other incidental businesses.

However, on September 7, 1971, respondent Leon Cooper, who is a landowner and resident of Malibu, filed a complaint for declaratory relief seeking to have the zone-change ordinance declared unconstitutional. The complaint did not raise any issues with respect to the California Environmental Quality Act of 1970 (CEQA) (Pub. Resources Code, § 21000 et seq.) which had been adopted by the California Legislature in 1970. Under the provisions of CEQA an environmental impact report (EIR) must be prepared prior to a change in zoning.

While the declaratory action was pending, the California Supreme Court filed its decision in *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], holding that private land developers undertaking projects pursuant to the authority of a governmental body must also comply with CEQA and prepare an EIR. The decision was not limited to a prospective application.

However, on December 5, 1972, the California Legislature undertook to ameliorate the hardships created by the *Friends of Mammoth* decision when it enacted Public Resources Code sections 21169 and 21170. The enactment was an urgency measure and, as such, immediately operational. Its general effect was to limit the retroactive application of CEQA in certain compelling situations. Section 21169 validates all projects "undertaken, carried out or approved" prior to December 5, 1972, despite a failure to comply with the requirements of CEQA. With respect to those projects which were pending litigation on December 5, 1972, the Legislature provided that such projects would be validated as well, where *"substantial liabilities for construction and necessary materials have been incurred."* (§ 21170; italics added.)

Failure to comply with the requirements of CEQA is not controverted by real party. Following the enactment of the above described statutory sections, real party in interest amended his pleadings alleging that he had performed substantial construction and had incurred substantial liabilities for necessary materials, and therefore fell within the "vested rights"

exception to CEQA compliance pursuant to section 21170 of the Public Resources Code.

The trial court did not agree. It concluded that although Sherman performed in good faith and in reliance upon the zoning change, the construction work performed by him "was not substantial when viewed in relation to the overall project, and no substantial liabilities for necessary materials were so incurred." The trial court also made the following conclusion of law: "Public Resources Code Section 21170 is clear and requires *in the conjunctive* substantial liabilities for construction, and substantial liabilities for necessary materials, and substantial construction." (Italics added.)

The above judgment was appealed by real party in interest. The case was heard before division two of this district in June 1974 (*Cooper* v. *County of Los Angeles, supra,* 49 Cal.App.3d 34). In its published opinion, the Court of Appeal held that the trial court imposed too many conditions upon the qualification of the project for validation under section 21170. The court expressed the opinion that the phrase "substantial liabilities for construction and necessary materials have been incurred," as worded within the statutory section, *was not intended to be in the conjunctive,* and also that section 21170 should be interpreted liberally in accordance with the legislative intent.

On the subsequent remand, the trial court once again rendered judgment against real party in interest. It concluded that the construction performed and the liabilities incurred by Sherman were not, as an aggregate, "substantial" within the meaning of the appellate court opinion and section 21170. In so holding, the trial court adopted the following findings of fact and conclusions of law:

"FINDINGS OF FACT

". . . . . . . . . . . . . . . . .

"16. The Real Party in Interest incurred the following substantial liabilities for construction and necessary materials in good faith and in reliance on zoning ordinance 10289 between July 15, 1971, the effective date of the ordinance, and October 12, 1972:

"a. Consulting and design work by Mr. Monsato in the amount of $1,200.00.

"b. Preliminary engineering geological report by F. Beech Laten and Associates in the amount of $1,600.00.

"c. Percolation tests and study of sewage disposal facilities by Kenneth I. Mullen, Consulting Engineers, Inc. in the amount of $2,212.27.

"17. Prior to October 12, 1972, the Real Party in Interest did not perform any work that would constitute substantial construction *either in dollar amount or in a percentage relation to the overall project.*" (Italics added.)

"CONCLUSIONS OF LAW

". . . . . . . . . . . . . . . . . . .

"5. Prior to October 12, 1972, the Real Party in Interest incurred a substantial liability for materials and construction.

"6. Prior to October 12, 1972, the Real Party in Interest did not perform substantial construction either *in dollar amount or in percentage relation to the overall project.*

". . . . . . . . . . . . . . . . . . .

"8. Sections 21169 and 21170 of the Public Resources Code do not operate to confirm, validate, and declare legally effective Zoning Ordinance 10289 because the Real Party in Interest did not perform substantial construction prior to October 12, 1972." (Italics added.)

Real party in interest contends that the trial court, on remand, "in contravention of the established doctrine of the law of the case" ignored the principles of law established by the appellate court in its opinion. He urges that the mandate of the appellate court in *Cooper* should be interpreted as validating, under section 21170, a land development project if either substantial liabilities or substantial construction can be shown by the weight of the evidence. It is his conclusion that since the trial court concluded that he had incurred "substantial liabilities for necessary materials for construction," and since the law of the case requires the aforesaid *Cooper* interpretation of section 21170, his project should have been validated by the trial court as a matter of law.

Respondent, on the other hand, insists that real party in interest has misconstrued the appellate court opinion. He contends that substantial construction as well as substantial liabilities must be shown by the weight of the evidence before a validation under section 21170 can be proper.

It is evident from the above that the sole issue for us to consider on this second appeal is whether the trial court, on remand, properly applied the *law of the case* as interpreted by the appellate court in its *Cooper* opinion.

DISCUSSION

I

In the case where a reviewing court has remanded a matter to a trial court, with instructions, the trial court is required to carry out those instructions in consonance with the principle of the law of the case—any · material variance or deviation is unauthorized, and constitutes error. (See *Hampton* v. *Superior Court,* 38 Cal.2d 652, 656 [242 P.2d 1]; *Coffee-Rich, Inc.* v. *Fielder,* 48 Cal.App.3d 990, 998 [122 Cal.Rptr. 302].) The principle is founded upon a need for judicial economy in the administration of justice. (*People* v. *Rath Packing Co.,* 44 Cal.App.3d 56 [118 Cal.Rptr. 438]; *English* v. *Olympic Auditorium, Inc.,* 10 Cal.App.2d 196 [52 P. 267].) However, the doctrine applies exclusively to issues of law, and not those of fact. (*Estate of Baird,* 193 Cal. 225, 236 [223 P. 974]; *Muktarian* v. *Barmby,* 264 Cal.App.2d 966, 968 [70 Cal.Rptr. 903].) Moreover, it does not apply to issues that could have been raised at the first appeal, but were not, or to those conclusions of law that were not necessary to the appellate court's decision. (*DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 179 [18 Cal.Rptr. 369, 367 P.2d 865]; *Estate of Horman,* 5 Cal.3d 62, 73 [95 Cal.Rptr. 433, 485 P.2d 785].) Finally, since it is a rule of procedure, it does not go to the court's power, and will not be given effect where its application will result in an unjust decision. (See *People* v. *Shuey,* 13· Cal.3d 835, 842 [120 Cal.Rptr. 83, 533 P.2d 211]; *Pigeon Point Ranch, Inc.* v. *Perot,* 59 Cal.2d 227, 231 [28 Cal.Rptr. 865, 379 P.2d 321].)

With the above principles in mind, we now proceed to consider the questions: what precisely did the appellate court in *Cooper* hold, and did the trial court, on remand, properly apply that holding to the facts of the instant case?

## II

On page 41 of the opinion, the court concluded that sections 21169 and 21170 of the Public Resources Code could be interpreted as creating three classifications of projects: "(1) those which were not under legal attack prior to December 5, 1972, (2) those which were under legal attack prior to December 5, 1972, but substantial detriment would result if not validated, and (3) those under legal attack prior to December 5, 1972, and no substantial detriment would result from invalidation." The court went on further to state that, "Projects under classification (1) and (2) are validated—those under classification (3) are not."

It is undisputed that the real party in interest was involved in litigation concerning his "vested rights" exemption claim prior to December 5, 1972. This appeal is a continuation of that earlier litigation. Therefore, real party, on remand, was required to demonstrate to the trial court by the weight of the evidence that his case properly fell within classification (2) as described above. This he has failed to do.

The appellate court in its *Cooper* opinion enunciated a set of standards by which to gauge whether or not a land developer fell within classification (2). On page 42 of that opinion the court said:

"Thus 'substantial' has connotations of both quantity and comparison and we are of the opinion that the Legislature intended that either be appropriately applied. In the case of a relatively small project comparing the amount of construction and liability to the total would be an appropriate test of substantiality. In other words, if a large or important part of the project had already been completed or a large percentage of the liability incurred, the project would be validated. On the other hand, construction or liability which was *quantitatively substantial* would meet the statutory requirement regardless of the fact that in terms of a large project it might not constitute a substantial *percentage by comparison.*

"In other words, for example, $100,000 in construction or liability is substantial by any standard yet on a $1 million project it would constitute only 10 percent while on a $200,000 project it would constitute 50 percent. A comparison test under such circumstances would be inappropriate in achieving the intent of the statute." (Italics added.)

We read the above quoted language as indicating that the extent of substantial liability or substantial construction standing alone means

very little. The primary consideration is the overall "substantial detriment" whether it be in terms of liability, construction, or both.

■ We also read the above as establishing two separate and distinct tests to be used in determining whether a land development project qualifies for validation pursuant to the appellate court's classification (2) and section 21170 of the Public Resources Code. The choice between which of the two tests to apply in any given case is dependent upon the size of the project involved in the controversy.

If the project is a relatively small one, then a "percentage comparison" test is most appropriate. Under this test, the amount of liability incurred and construction performed in reliance is simply, as its name implies, compared on a percentage basis to the whole. If the percentage is "substantial" in terms of common sense and ordinary logic, then the project is to be validated.

On the other hand, if the project is a relatively large one, then the "quantitatively substantial" test becomes determinative. Regrettably, the appellate court in *Cooper* did not make the mechanics of this test entirely clear. We presume that it was the court's intention that the ecological balance remain the primary consideration. After all, preservation of the ecological balance is the very reason why the Legislature enacted CEQA. Therefore, in keeping with the spirit of *Cooper* and the CEQA legislation, we hold that under this latter test, the extent of reliance as determined in the individual case must be balanced against the foreseeable risk of injury to the ecosystem.

A number of appellate courts have already made use of this kind of balancing technique in deciding the question of validation pursuant to section 21170. Those decisions have gone both ways, not however, without setting a logical trend. In those cases where validation ultimately resulted, much greater sums of money were involved than is involved in the present case. For example, in *Pacific Palisades Property Owners Assn. v. City of Los Angeles,* 42 Cal.App.3d 781, 788 [117 Cal.Rptr. 138]—$400,000 in liability was incurred. In *Friends of Lake Arrowhead* v. *Board of Supervisors,* 38 Cal.App.3d 497, 509-510 [113 Cal.Rptr. 539]—$900,000 in liability was incurred. In both of these cases, the land development projects were validated. On the other hand, in *Burger* v. *County of Mendocino,* 45 Cal.App.3d 322, 325 [119 Cal.Rptr. 568]—only $6,500 in liability was incurred. In that case, validation was denied. The same held true in *Environmental Law Fund, Inc.* v. *Town of Corte Madera,* 49 Cal.App.3d 105, 118 [122 Cal.Rptr. 282]—where $10,000 to

$15,000 in liability could be shown by the weight of the evidence. Moreover, in the above cases where validation resulted, substantial construction had been performed. In the instant case there is none.

## III

The appellate record indicates that real party's construction plans include a hotel, theatre house, restaurant, bar, and other incidental businesses. Indeed, by any standard the planned construction project is quite massive. It follows that the trial court on remand was required, in consonance with the *Cooper* opinion, to use the "quantitatively substantial" balancing test in assessing whether real party qualified for CEQA exemption pursuant to the appellate court's classification (2) and section 21170.

The trial court assessed real party's claim for exemption under both tests. As evidence, the trial court made the following conclusion of law: "6. Prior to October 12, 1972, the Real Party in Interest did not perform substantial construction either in dollar amount [*quantitatively substantial test*] or in percentage relation to the overall project [*percentage comparison test*]." (See also par. 17 of the trial court's conclusions of law.) We find no error here, since the trial court ultimately denied validation under both tests.

In reaching its decision, the trial court specifically concluded that real party in interest had incurred slightly over $5,000 of liability in reliance upon the zoning ordinance. It also concluded that no construction whatsoever had been performed by him while so relying. We cannot dispute these findings. This appeal is on the judgment roll, and no reporter's transcripts have been provided to us. On this state of the record, we are required to assume that the evidence and testimony presented to the trial court substantially supports the trial court's findings of fact. (See *Guardianship of Walters,* 37 Cal.2d 239, 251-252 [231 P.2d 473]; *Ducray v. Ducray,* 257 Cal.App.2d 480, 483 [64 Cal.Rptr. 825]; *Williams* v. *Inglewood Board of Realtors,* 219 Cal.App.2d 479, 482-483 [33 Cal.Rptr. 289].)

We realize that any amount of liability incurred in reliance upon section 21170 creates a bona fide hardship case. We are also mindful of the fact that there will be long-term economic ramifications following a decision of this type.[2] However, in balancing the $5,000 loss incurred by

---

[2]See Karlin, Horton & Polster, *Zoning* (1972) 4 Sw.U. L. Rev. 1, 3-8.

real party in interest against the potential risk of harm to the Malibu ecosystem, we are required to follow the reasoning set forth in the *Burger* and *Environmental Law Fund, Inc.* cases, and affirm the judgment of the trial court. The instant case is obviously one involving minimal reliance. As the trial court concluded, the economics do not favor real party—the danger to the ecosystem being far more outweighing. Under these circumstances, the filing of an environmental impact report would best serve the interests of all concerned and is what the Legislature has mandated.

We therefore hold that the trial court did not err in concluding that the real party in interest had failed in his proof to establish that his reliance upon the zoning ordinance was "quantitatively substantial" as to require validation of his project pursuant to section 21170. We hold further that the trial court properly applied the law of the case as set forth by the appellate court in its *Cooper* opinion.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.