[Civ. No. 60707. Second Dist., Div. Five. Aug. 10, 1981.]

JOHN A. WORSLEY, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE LONG BEACH JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and
Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

410

---

---

COUNSEL

John A. Vander Lans, City Prosecutor, Robert R. Recknagel, Assistant City Prosecutor, and Gerry L. Ensley, Deputy City Prosecutor, for Real Party in Interest and Appellant.

Gelman & Grosfeld, Gelman, Grosfeld & Termini and Alexander M. Gelman for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

---

OPINION

**STEPHENS, Acting P. J.**—In this matter, the People, as real party in interest, appeal from the judgment of the superior court granting a writ of mandate to strike a prior conviction of defendant John A. Worsley (hereafter respondent). At issue is (1) whether the superior court erred in striking respondent's prior conviction based on the finding that a rubber stamped trial docket was an invalid method of recordation; (2) whether the present review procedure of Vehicle Code section 23102.2[1] violates the People's "equal protection" and the right to a fair hearing (due process); and (3) whether section 23102.2, as presently construed, fails to correctly allocate both the burden of proof and the initial burden of producing evidence.[2]

---

[1]Hereinafter all references to code sections will be to the Vehicle Code unless otherwise specified.

[2]The People raise several secondary arguments dealing with the unconstitutionality of section 23102.2. Throughout their brief the People assert *People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15] to be both "good constitutional law but poor criminal procedure." Seemingly in the same vein, the People cite the cases of *Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858], *Hasson* v. *Cozens* (1970) 1 Cal.3d 576 [83 Cal.Rptr. 161, 463 P.2d 385] and *Mitchell* v. *Orr* (1969) 268 Cal.App.2d 813 [74 Cal.Rptr. 407], which allow a court to strike a prior for a pending suspension hearing with the Department of Motor Vehicles (hereinafter DMV) and assert they are "clearly in error." To the best of our analysis, these cases are still good law.

We find the superior court did err in its decision to strike respondent's prior conviction, but disagree with the contention that section 23102.2, as presently applied, is unconstitutional.

## FACTS

On August 13, 1979, respondent was charged with driving under the influence of alcohol in violation of section 23102, subdivision (a). It was further alleged that respondent had suffered a prior conviction of the same offense in 1975.

At the arraignment proceeding, respondent, having expressly waived the right to counsel, entered a plea of not guilty.

On September 6, 1979, respondent, after being informed of his constitutional rights and now represented by counsel, withdrew his plea of not guilty, entered a plea of guilty and admitted the prior conviction.

After waiving time for sentencing, respondent was ordered to serve four days in jail,[3] was placed on probation for one year, was given a fine of $355.50, and his driver's license was suspended for one year.

On February 1, 1980, respondent filed a motion in the municipal court to strike this conviction. This motion was made presumably to prevent its use by the DMV, in its attempt to suspend his license, and to thwart any use of the conviction in a pending section 23102, subdivision (a), action in the Los Angeles Municipal Court. The motion was denied and respondent petitioned for a writ of mandate on March 14, 1980, to the Appellate Department of the Superior Court of Los Angeles. In that petition respondent alleged the 1979 conviction was unconstitutional because "the docket sheet ... [did] not reflect that the defendant *expressly and explicitly* [waived] his constitutional rights ...." (italics in original.) In his petition, respondent challenged the constitutionality of the waiver of his constitutional rights in conjunction with and evidenced by a series of rubber stamped memorializations on the docket sheet.

An alternative writ of mandate was filed on March 20, 1980, and the court tentatively ruled that the docket, as presently prepared, was unconstitutional.

---

[3]Respondent's sentence was credited to reflect four days spent in custody.

A motion for reconsideration was submitted by the municipal court and upon presentation of arguments by both counsel, the court let stand its earlier order striking respondent's 1979 conviction. It is from this order that the People appeal.

## DISCUSSION

■ The People contend that the superior court erred in deciding that the particular docket herein was constitutionally deficient.

It is argued that the docket entry relied upon by the superior court provided prima facie evidence of the validity of the prior convictions and was sufficient to withstand the applicable *Boykin-Tahl-Mills* test.[4] The so-called *Boykin-Tahl-Mills* test requires a docket entry and/or minute order to recite that the defendant expressly and explicitly waived his constitutional rights. These include the rights to counsel, jury trial, confrontation of witnesses/accusers, and against self-incrimination prior to a court's acceptance of a plea of guilty. (See *Boykin* v. *Alabama, supra,* 395 U.S. at p. 238 [23 L.Ed.2d at p. 276]; *In re Tahl, supra*, 1 Cal.3d at p. 132; *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086].) This waiver must expressly appear on the face of the record (docket). (*In re Tahl, supra*, 1 Cal.3d at p. 132.)

"'The purposes of *Boykin,* as interpreted and implemented by *Tahl,* are to assure both that pleas of guilty are intelligently made and to provide a "complete record" to facilitate disposition of post-conviction attacks on the plea.'" (*Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 308, quoting *People* v. *Gallegos* (1971) 4 Cal.3d 242, 247 [93 Cal.Rptr. 229, 481 P.2d 237].) In *Mills* the Supreme Court extended the *Boykin-Tahl* requirements to all misdemeanor pleas entered after the date of the *Mills* decision.

In the instant case the superior court has held that this particular docket failed to meet the principal requirements of *In re Smiley* (1967) 66 Cal.2d 606, 617, footnote 8 [58 Cal.Rptr. 579, 427 P.2d 179];[5] *People* v. *Buller* (1980) 101 Cal.App.3d 73, 75-76 [160 Cal.Rptr. 657]; *In re Yurko* (1974) 10 Cal.3d 857, 863 [112 Cal.Rptr. 513, 519 P.2d 516]

[4]*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 446].

[5]The superior court judge held footnote 8 of *In re Smiley, supra,* to be controlling.

and *In re Birch* (1973) 10 Cal.3d 314, 321 [110 Cal.Rptr. 212, 515 P.2d 12]. Its reliance on *In re Smiley, supra,* 66 Cal.2d at page 617, footnote 8[6] and *People* v. *Buller, supra,* 101 Cal.App.3d 73, was incorrect.

Footnote 8 of *In re Smiley*, which refers to the specificity required in dockets, states: "Such entries, of course, must be prepared for the particular case before the court; the requirement will not be satisfied by the use of minute forms containing printed recitals of this advice...." (*Id.,* 66 Cal.2d at p. 617.) This footnote refers particularly to the use of preprinted forms that recite a defendant's rights. (See *People* v. *Buller, supra,* at pp. 75-76.) Both *Smiley* and *Buller* dealt with an unrepresented defendant and the use of a preprinted form that failed to recite at least one required constitutional right, i.e., right to counsel. There is no such failure of the record to that effect here.

The record furnished to the Los Angeles Superior Court consisted only of the 1979 Long Beach trial docket. The docket shows, by way of stamped and handwritten entries, that respondent, after expressly waiving his right to counsel, was arraigned on August 13, 1979, informed of his legal rights and entered a plea of not guilty. The docket continues in pertinent part as follows:

[6]The superior court's findings were apparently not reliant on respondent's argument that the record failed to reflect express and explicit waivers.

Considering the lack of either allegation or evidence to the contrary, we must assume these advisements and waivers as memorialized here, were either correspondingly stamped into the docket or stamped in within a relative time to the giving of these recitals.

Accordingly, we are not dealing with the "dreaded" impersonal pre-printed forms of *Smiley* or *Buller*, but a contemporaneous reporting of what respondent was advised and what he waived. Though this difference be small, it is significant. The inherent problem with the use of preprinted forms is that it is a recording of formal rights and waivers *before* their actual delivery. This is where the dangers arise. The use of a stamp for recording purposes is the mechanical impressing with a device or lettering to authenticate, certify, or register formal or official examination of the action taken. (See Webster's Third New Internat. Dict. (1966) p. 2222.)

Whether the docket is filled out with a rubber stamp, typewriter, or quill pen should make no difference so long as it can be determined that the advisements and waivers were placed in the docket by one authorized and qualified to do so, and the memorializations reflect the true nature of the recitals. (See *People v. Weitzer* (1969) 269 Cal.App.2d 274, 280 [75 Cal.Rptr. 318]; *People v. Brussel* (1932) 122 Cal.App. Supp. 785, 788-789 [7 P.2d 403].)

Since this particular docket provides a reviewing court with more than a silent record (*In re Smiley, supra,* 66 Cal.2d 606, 624), the municipal court docket entry is some indication of what occurred. "[T]here [remains] a presumption that in preparing the docket entry official duty [judge's and clerk's] was regularly performed (Evid. Code, § 664)...." Therefore "'... such an entry must ordinarily be deemed to speak the truth.'" (*In re Lopez* (1970) 2 Cal.3d 141, 146 [84 Cal.Rptr. 361, 465 P.2d 257], quoting from *In re Johnson* (1965) 62 Cal.2d 325, 330 [42 Cal.Rptr. 228, 398 P.2d 420]. See also *People v. Witt* (1971) 15 Cal. App.3d 6, 14 [92 Cal.Rptr. 770].)

Respondent notes that in many California courts, the deficiencies caused by preprinted forms or rubber stamps (*Nelson v. Justice Court* (1978) 86 Cal.App.3d 64 [150 Cal.Rptr. 39]) has been alleviated by the use of "*Tahl* Waiver Forms." These clearly designate the accused's constitutional rights and require the defendant to acknowledge the waiver of those rights by initialing them. (See *Mills* v. *Municipal*

*Court, supra*, 10 Cal.3d 288, 312-313; *Illingworth* v. *Municipal Court* (1980) 102 Cal.App.3d 19 [164 Cal.Rptr. 53].) Here the docket gives the same complete recital of rights and waivers as the *"Tahl* Waiver Forms." Despite the absence of the defendant's initialling of waivers, at least one of the two municipal court judges who heard this case signed the docket. In our judgment, a judge's signature on the face of the docket sufficiently demonstrates that these memorialized events actually occurred. There is, and remains, a presumption that a court was correct in its advisements unless proven otherwise. Admittedly, "[t]he taking of a written waiver . . . is the better practice but the present record is not inconsistent with *Boykin-Tahl* standards." (*Nelson* v. *Justice Court, supra*, 86 Cal.App.3d at p. 67.) It has long been recognized that "'when a defendant appears in court personally to plead to a misdemeanor offense, the practicalities of the crowded inferior courts will permit some deviation from the strict felony procedure so long as the constitutional rights of defendants are respected.'" (*Hartman* v. *Municipal Court* (1973) 35 Cal.App.3d 891, 893 [111 Cal.Rptr. 126], quoting *Mills* v. *Municipal Court, supra*, 10 Cal.3d 288, 307; *In re Johnson* (1965) 62 Cal.2d 325, 336 [42 Cal.Rptr. 228, 398 P.2d 420]; see also *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522, 528 [145 Cal.Rptr. 636].)

Therefore, though the use of a stamp may not be "the most desirable . . . method of recording such advisements and waivers" it is still an "acceptable" method. (*Ganyo* v. *Municipal Court, supra*, at p. 530.)

■ The superior court additionally relied on the cases of *In re Yurko, supra*, 10 Cal.3d 857, 863, supported by *In re Birch, supra*, 10 Cal.3d 314, 319,[7] in finding this docket unconstitutional.

In *In re Yurko* (at p. 860) the Supreme Court extended the *Boykin-Tahl* requirements for a valid plea of guilty to an admission of prior felony convictions. Because a defendant who admits priors gives up the right to trial by jury on the issue, the privilege against self-incrimination, and the right to confront the witnesses against him, he must be given "express and specific admonitions" as to the constitutional rights he is waiving, before the court accepts an admission of priors. (*In re Yurko, supra*, at p. 863; *Boykin* v. *Alabama, supra*, 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280].)

---

[7]All further discussion regarding *In re Yurko* will also apply to *In re Birch.*

The superior court judge considered a prior driving under influence (D.U.I.) conviction onerous enough to merit the invocation of the *Yurko* decision. He felt the docket recital "defendant further advised as to the nature of the charge and the consequences of a guilty plea and admission of the prior conviction ..." did not meet *Yurko's* requirements. We agree that a prior D.U.I. conviction, like any other conviction, may have great impact on the punishment chosen for a defendant. However, "[w]hile it is necessary that the defendant be informed of the consequences of his plea, *In re Tahl* (1969) 1 Cal.3d 122, 132 ..., there appears to be no requirement ... that the record explicitly show what the advice of [the] consequences [of plea and admission of prior] actually was ... *In re Ronald E.* (1977) 19 Cal.3d 315, 321 ... requires either a record of such advice [of the consequences of plea (admission)] *or* other evidence that the defendant was aware of the consequences before pleading. ... *Ronald E.* [however] holds that a plea is invalid only if prejudice resulted from a failure to advise of the consequences of the plea [admission]." (*People* v. *Salazar* (1979) 96 Cal.App.3d Supp. 8, 13-14 [157 Cal.Rptr. 834]; see also *People* v. *Kirkwood* (1977) 70 Cal.App.3d 290, 293 [138 Cal.Rptr. 649].) Here, not only does the docket reflect that respondent was advised of the consequences of a plea of guilty and admission of a prior conviction, but that he understand/s the nature of the charge/s against him and the consequences of his plea of guilty and admission of the prior conviction. Additionally, respondent fails to assert any prejudice and the record shows the imposition by the trial court of a minimum sentence.[8]

In the absence of a court reporter memorializing the proceedings, it might be advisable that in all proceedings dealing with admissions of prior convictions a record extending the nature and extent of the possible consequences affecting the defendant be set forth.

The People next question the validity of the present hearing procedure regarding section 23102.2 as enhanced by the holding in *Youkhanna* v. *Municipal Court* (1978) 86 Cal.App.3d 612 [150 Cal. Rptr. 380]. They contend that section 23102.2, when analyzed with *Youkhanna*, violates their right to fair trial and procedural due process by permitting only the defendant the right to admit extrinsic evidence in a hearing on the constitutionality of prior convictions.[9]

---

[8]As stated above, respondent was sentenced to four days in jail (sentence suspended), a find of $355.50 was imposed and his driver's license was suspended for one year.

[9]In *Youkhanna* v. *Municipal Court, supra,* 86 Cal.App.3d 612, the People were de-

To begin with "[i]t is well-settled law that the courts will not give their consideration to questions as to the constitutionality of a statute unless such consideration is necessary to the determination of a *real and vital controversy between the litigants in the particular case before it.* It is incumbent upon a party to an action or proceeding who assails a law invoked in the course thereof to show that the provisions of the statute thus assailed are applicable to him and that he is injuriously affected thereby." (Italics added. *People* v. *Perry* (1931) 212 Cal. 186, 193 [298 P. 19, 76 A.L.R. 1331]; see also *People* v. *Singer* (1976) 56 Cal.App.3d Supp. 1, 5 [128 Cal.Rptr. 920]; *Azusa Western, Inc.* v. *City of West Covina* (1975) 45 Cal.App.3d 259, 266 [119 Cal.Rptr. 434].)

In agreeing with the instant record, which reflects that neither respondent nor the People admitted, sought to admit, or were denied admission of extrinsic evidence in any of the lower court preceedings re the constitutionality of the prior, the People admit their freedom from prejudice. However, the People cite *In re Walters* (1975) 15 Cal.3d 738 [126 Cal.Rptr. 239, 543 P.2d 607] in support of their argument that their lack of prejudice hardly renders the issue moot. That case holds "[w]here questions of general public concern are involved, particularly in the area of the supervision of the administration of criminal justice, [courts] may reject mootness as a bar to a decision on the merits." (*Id.* at p. 744. See *In re Fluery* (1967) 67 Cal.2d 600, 601 [63 Cal.Rptr. 298, 432 P.2d 986]; *In re Newbern* (1961) 55 Cal.2d 500, 505 [11 Cal.Rptr. 547, 360 P.2d 43].)

Here, the challenge asserted by the People is purely hypothetical in nature and, as such, is not a real and vital controversy. Therefore, since the question of whether one party's or another's denial of the right to introduce extrinsic evidence is not immediately at issue, it requires no further discussion by this court.

■ The People lastly contend that section 23102.2, subdivision (b), as presently construed, fails to correctly allocate both the burden of proof and the initial burden of producing evidence.

---

nied the right to introduce evidence after stipulating to the unconstitutionality of the docket in controversy. We feel it is manifest that this decision does not prevent the People from introducing evidence to support their arguments re constitutionality *ante* any such stipulation.

Vehicle Code section 23102.2, subdivision (b),[10] explicitly prescribes the procedure and burdens required by the parties to attack a prior conviction of driving under the influence of intoxicating liquor. Subdivision (b) of section 23102.2 states in pertinent part as follows: "(b) The court shall, prior to the trial of any pending criminal action against the defendant wherein such prior conviction is charged as such, hold a hearing, outside of the presence of the jury, in order to determine the constitutional validity of the charged prior conviction issue. At such hearing the procedure, the burden of proof and the burden of producing evidence shall be as follows:

"(1) The burden of proof remains with the prosecution throughout and is that of beyond a reasonable doubt.

"(2) The prosecution shall initially have the burden of producing evidence of the prior conviction sufficient to justify a finding that the defendant has suffered such prior conviction.

"(3) In such event, the defendant then has the burden of producing evidence that his constitutional rights were infringed in the prior proceeding at issue.

"(4) If the defendant bears this burden successfully, the prosecution shall have the right to produce evidence in rebuttal.

"(5) The court shall make a finding on the basis of the evidence thus produced and shall strike from the accusatory pleading any prior conviction found to be constitutionally invalid."

The People insist the problem with section 23102.2 is in the code's failure to distinguish between the prosecution's "normal burden (beyond a reasonable doubt) to prove the prior . . . and the totally separate burden . . . of alleging and proving purely constitutional infirmity of the prior conviction . . . ." They argue the "confusion . . . of the two independent and distinct burdens of proof mentioned above . . . has apparently and unwittingly shackled prosecutors with the intolerable burden of proving . . . constitutionality of all prior convictions 'beyond reasonable doubt' in addition to proving the existence of the prior conviction."

---

[10]Section 23102.2 is a codification of the procedure to determine the constitutional validity of prior convictions as set out in *People v. Coffey, supra*, 67 Cal.2d 204, 217-218.

They support this conclusion with what we find to be a very narrow reading of Evidence Code section 500. They believe section 500 places both the burdens of proof and initial burden of producing evidence solely upon the attacking defendants and never upon the People. Granted, section 500 typically allocates both the burden of proof and producing evidence in this manner, however, it is a basic rule of statutory construction that the court must look to the words of the statute to determine the legislative intent. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Had it been the intent of the Legislature to limit the burdens of proof and initial burden of producing evidence *solely* to attacking defendant as the People contend, section 500 would have expressly or impliedly so indicated.

A closer inspection of Evidence Code section 500 reveals that "*Except as otherwise provided by law*, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Italics added.)

Further explanation of this rule is found in the Law Revision Commission comment which follows Evidence Code section 500. "[T]he general rule allocating the burden of proof applies 'except as otherwise provided by law.' The exception is included in recognition of the fact that the burden of proof is sometimes allocated in a manner that is at variance with the general rule. In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact.... '[T]he truth is that there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations.'" (9 Wigmore, Evidence (3d ed. 1940) § 2486, p. 275. See also *Baber* v. *Superior Court* (1980) 113 Cal.App.3d 955, 966 [170 Cal.Rptr. 353].)

Justice Bernard S. Jefferson notes that the Legislature and the courts are both empowered under Evidence Code section 500 to assign the burden of proof *contrary* to that required by the general rule and that purely policy considerations and fairness may dictate the assignment. (Jefferson, Cal. Evidence Benchbook (1972) § 45.2, pp. 781, 783.)

Therefore, any argument that section 500 places the burden of proof and burden of producing evidence exclusively on the attacking party is simply a misstatement of this rule.

As previously indicated, section 23102.2, subdivision (b), specifically outlines the burden and the procedure necessary for attacking the constitutionality of a prior conviction. Since this procedure has been set out ad infinitum in several previous opinions, we feel it unnecessary to reiterate it again.

Additionally, the People contend that the "beyond a reasonable doubt" standard prescribed by section 23102.2 is invalid in that its application is clearly the result of confusing the People's burden of producing evidence that a prior conviction occurred with the defendant's pretrial burden of proving the same prior unconstitutional. According to the People, "[n]othing outside of the radical (and mistaken) innovation of § 23102.2(b)(1) requires so high a burden of proof for constitutional issues which ... are purely legal questions ...." The People predicate their argument on *People v. Coffey, supra,* 67 Cal.2d 204, asserting that though *Coffey* placed the burden of proof on the prosecution, it did not establish so rigid a requirement of proof as insisted upon by section 23102.2. As we noted earlier, it is purely within the Legislature's powers to define the burden of proof in the manner they feel best suits public policy so long as it remains constitutional. (See Evid. Code, §§ 115, 500, 501; see also Pen. Code, § 1096.) Since "a legislative act is presumed to be constitutional and any doubts must be resolved in favor of its validity," it is up to the challenger of the statute to do more than merely allege it fails to follow the traditional burden. (*Cooper v. County of Los Angeles* (1975) 49 Cal.App.3d 34, 41 [122 Cal.Rptr. 464, 76 A.L.R.3d 1210]; see also *Porter v. City of Riverside* (1968) 261 Cal.App.2d 832 [68 Cal.Rptr. 313].)

To the extent that we understand the People's argument we are able only to perceive and extract a distinction of cases. Such distinctions are meaningless without understandable application in light of the legislatively expressed intent.

Therefore, absent a clear demonstration that the burden of proof required by section 23102.2 is excessively high, this court is compelled to find in favor of the statute's validity.

The judgment is reversed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied August 27, 1981.