[Crim. No. 16771. In Bank. Oct. 26, 1973.]

In re JAMES ROBERT BIRCH on Habeas Corpus.

**COUNSEL**

Warren I. Wolfe for Petitioner.

Roger Arnebergh, City Attorney, and David M. Schacter, Deputy City Attorney, for Respondent.

## OPINION

**TOBRINER, J.**—In July 1972 petitioner, James Birch, appeared before the Los Angeles Municipal Court without counsel and entered a plea of guilty to the misdemeanor charge of violating Penal Code section 647, subdivision (a), which proscribes engaging in ". . . lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view."[1] Birch now seeks a writ of habeas corpus, challenging the validity of his guilty plea on several grounds. As discussed below, we have concluded that petitioner's conviction must be set aside because the record does not reveal that Birch was properly advised prior to his plea either of his right to counsel or of the sex registration requirement flowing directly from a conviction under section 647, subdivision (a).

The record is meagre as to the events which culminated in petitioner's arrest but, according to petitioner's allegations, the facts are as follows: At approximately 1:30 a.m. on the morning of July 24, 1972, petitioner and three friends, after having consumed a six-pack of beer, came to the Taco Bell restaurant located at Lassen and Sepulveda in Los Angeles. Although the restaurant was closing for the night, they arrived in time to order some food. Petitioner desired to use the restroom but was informed that it had been cleaned and closed for the night. After returning to his car to eat, he was forced to relieve himself. He left the car and urinated while standing next to the vehicle and facing a retaining wall which was approximately 40 feet from the restaurant and encompassed it on three sides. The parking area was illuminated by one lamp located 50 feet from petitioner. Unknown to him, two police officers sitting in an unmarked car on Lassen Street observed him and proceeded to place him under arrest for lewd and dissolute conduct.

On July 27, 1972, petitioner appeared without counsel in the Los Angeles Municipal Court for arraignment and entry of plea. The record does not clearly indicate precisely what transpired in court before petitioner

---

[1]Section 647, subdivision (a) states: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: (a) Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view."

entered his guilty plea. The reporter's transcript, containing a transcription of the oral proceedings, reveals only that the trial judge advised petitioner of the charge against him, asked how he pled, and upon petitioner's response of "Guilty," suspended the imposition of sentence upon condition that petitioner serve five days in jail.[2] The transcript contains nothing which demonstrates that petitioner was advised of his right to counsel or any other constitutional right, nor does it reveal that petitioner ever waived any of such rights. The clerk's docket entry, by contrast, contains hand-checked, rubber-stamped entries which purport to indicate that petitioner "expressly waived" his right to counsel and various other constitutional rights, and that "after inquiry by court, the court found such waivers were knowingly, intelligently and understandingly made . . ."[3]

Despite this conflict, the documents in the record do concur on several points: petitioner did plead guilty to violating section 647, subdivision (a) of the Penal Code, and imposition of sentence was suspended upon the condition that petitioner remain on summary probation for one year and spend the first five days in county jail. Petitioner served the five days in jail and, as a result of the conviction, he must comply with Penal Code section 290 which compels all those who have been convicted of sex offenses, including violation of section 647, subdivision (a), to register as sex offenders.

---

[2]The entire reporter's transcript reads:

"THE COURT: James Robert Birch. Mr. Birch, come forward. Mr. Birch you are charged on July 23 of this year, Violation of Subdivision (a) of Section 647 of the Penal Code, who at the time wilfully and unlawfully solicit a person or persons to engage in and did engage in lewd and dissolute conduct in a public place and in a place open to public and exposed to public view; to that charge how do you plead?

"THE DEFENDANT: Guilty.

"THE COURT: Imposition of sentence will be suspended. One year summary probation. Spend the first five days in the County Jail."

[3]The docket sheet contains the following rubber-stamped entries:

"DEFENDANT EXPRESSLY WAIVED HIS RIGHT TO:

_____COUNSEL

_____JURY TRIAL (. . . DEFENDANT'S ATTORNEY AND PEOPLE JOIN)

_____CONFRONTATION (. . . DEFENDANT'S ATTORNEY JOINS)

_____SELF-INCRIMINATION (. . . DEFENDANT'S ATTORNEY JOINS)"

Each of the blanks at the extreme left is marked with a hand-entered check, indicating that petitioner waived these rights. The docket sheet also contains the following rubber-stamped paragraph:

"AFTER INQUIRY BY COURT, THE COURT FOUND THAT SUCH WAIVERS WERE KNOWINGLY, INTELLIGENTLY, AND UNDERSTANDINGLY MADE; THAT DEFENDANT UNDERSTANDS THE NATURE OF THE CHARGE(S) AND CONSEQUENCES OF A PLEA OF GUILTY (NOLO CONTENDERE) THAT THERE IS A FACTUAL BASIS FOR THE PLEA; AND THAT IT IS FREELY AND VOLUNTARILY MADE."

By the present writ of habeas corpus, petitioner challenges the validity of his conviction, alleging that he was not advised of his right to counsel, right to trial by jury, right to confront witnesses or the privilege against self-incrimination prior to entering his plea of guilty. Further, he contends that, as a matter of law, the conduct which resulted in his arrest does not constitute lewd and dissolute conduct within the meaning of section 647, subdivision (a).

As we shall explain, we have concluded that petitioner's initial contention is meritorious since the record does not sufficiently demonstrate that petitioner was advised of his right to counsel. Moreover, we shall explain that, in the absence of counsel, the court bore the duty to inform petitioner prior to receiving his plea that, as a result of a conviction of violating Penal Code section 647, subdivision (a), petitioner would be ordered to register as a sex offender pursuant to state law. The record contains no evidence to suggest that any such advice was given. For each of these reasons, petitioner's conviction must be reversed.[4]

---

[4]Petitioner urges that rather than simply reversing the conviction for inadequate advice with respect to counsel and the consequences of the plea, we should order the charge dismissed on the ground that his conduct does not, as a matter of law, amount to a violation of Penal Code section 647, subdivision (a). In this regard petitioner relies on the recent cases of *In re Crumpton* (1973) 9 Cal.3d 463, 467-468 [106 Cal.Rptr. 770, 507 P.2d 74] and *In re Madrid* (1971) 19 Cal.App.3d 996 [97 Cal.Rptr. 354] which permitted defendants who pled guilty to Penal Code section 209 to attack their convictions on the ground that their undisputed conduct did not, as a matter of law, violate section 209 as construed in *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].

Both *Crumpton* and *Madrid,* however, were felony cases in which the facts of the crimes had been rather fully explored at preliminary hearings; although defendants' guilty pleas had obviated a complete exposition of the facts at trial, the courts in both *Crumpton* and *Madrid* emphasized that at the preliminary hearing " '[t]he victim . . . testified to the essential facts of the crime. The physical limits of the crime committed were defined by that testimony. Reference to the existing records demonstrates that the fleshing out of the narratives given by the respective victims would not bring the crimes committed within the purview of section 209. The quality of the events which occurred cannot be altered by the addition of detail.' " (*In re Crumpton* (1973) 9 Cal.3d 463, 468 [106 Cal.Rptr. 770, 507 P.2d 74] quoting *In re Madrid* (1971) 19 Cal.App.3d 996, 1002 [97 Cal.Rptr. 354].)

In the instant misdemeanor case, by contrast, no preliminary hearing was held and the only account of the facts before us is that alleged by the defendant. Although the People's return did not specifically controvert petitioner's allegations, the People did not concede the accuracy of Birch's description but simply took the position that in light of the guilty plea it could be presumed that defendant had committed such conduct that would constitute a violation of section 647, subdivision (a). Moreover, at oral argument, the People suggested that the police report of the incident, not included in the record, did not fully corroborate defendant's version of the facts.

On this state of the record, which discloses that no testimony has been taken or evidence adduced as to the facts underlying the crime and no stipulation has been

In analyzing petitioner's contentions, we begin with article I, section 13 of the California Constitution, which guarantees that "In criminal prosecutions, in any court whatever, the party accused shall have the right . . . to have the assistance of counsel for his defense. . . ." Penal Code section 987, subdivision (a), one of a series of statutory provisions implementing our state constitutional right to counsel,[5] provides that "[i]n a noncapital case, if the defendant appears for arraignment without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned, and shall be asked if he desires the assistance of counsel . . . ."; in addition, the court must also inform the defendant "that the court will appoint an attorney to represent him if he is unable to afford one." (*In re Smiley* (1967) 66 Cal.2d 606, 615 [58 Cal.Rptr. 579, 427 P.2d 179].) ▪ Such advice must be given to defendants charged with misdemeanors as well as with felonies (e.g., *id.* at p. 614; *In re McCoy* (1948) 32 Cal.2d 73, 76 [194 P.2d 531]) and is equally obligatory when a defendant indicates a desire to plead guilty as when he intends to enter a plea of not guilty. (E.g., *In re Johnson* (1965) 62 Cal.2d 325, 333-334 [42 Cal.Rptr. 228, 398 P.2d 420].)

Moreover, in scrutinizing waivers of counsel by defendants requesting to plead guilty, we have directed trial courts to assume an active, protective role to ensure that both the defendant's waiver of counsel and his guilty plea are knowingly and understandingly made. Thus, we have indicated that when confronted by a defendant who wishes to plead guilty without counsel, the trial judge, before accepting the waiver and plea, should first determine that the defendant " 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, [and] the punishment which may be exacted.' " (*In re Johnson* (1965) 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420], quoting *In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596]; see *People* v. *Chesser* (1947) 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246]; *People* v. *Hardin* (1962) 207 Cal.App.2d 336, 340 [24 Cal.Rptr. 563].) ▪ If an unrepresented defendant is unaware of the primary and direct consequences

entered as to such events, we believe that we should not attempt to determine whether the conduct allegedly resulting in the charges is, as a matter of law, insufficient to support a conviction under section 647, subdivision (a). If, on remand, the state chooses to reprosecute Birch on such charges, defendant will of course remain free to show that his conduct did not exhibit the requisite "sexual motivation" to bring it within the ambit of "lewd and dissolute conduct" proscribed by section 647, subdivision (a). (Cf. *In re Smith* (1972) 7 Cal.3d 362, 366 [102 Cal.Rptr. 335, 497 P.2d 807]; *Wainwright* v. *Procunier* (9th Cir. 1971) 446 F.2d 757, 759-760.)

[5]See, e.g., Penal Code sections 858, 859, 1018.

of his imminent conviction, his plea of guilty cannot reasonably be found to have been "knowingly and voluntarily" entered.

Applying these principles to the instant case, we must first determine whether petitioner was, in fact, properly informed of his constitutional right to counsel. The record in this case is devoid of any evidence that the court informed petitioner of his right to counsel as required by Penal Code section 987. As we have seen, absolutely nothing in the brief reporter's transcript indicates that any such advice was given (see fn. 2, *supra*); further, no specific notation in the clerk's docket declares that defendant was so advised.[6]

The People contend, however, that we can infer from the docket entry's hand-checked, rubber-stamped notation indicating that petitioner *waived* his right to counsel (see fn. 3, *supra*) that petitioner was also *informed* of his right to counsel. In the first place, of course, this docket entry is directly contradicted by the reporter's transcript, which shows no such waiver. Moreover, even if the fact of defendant's waiver were established, such waiver would in no way indicate that defendant had been properly advised of his right to counsel. The waiver, if it were indeed tendered, could well have resulted from improper or incomplete advice. ■ To avoid just such uncertainties we have made clear that to be adequate "docket entries [must] specifically [list] the rights of which the defendant is actually advised. . . . 'No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. . . .' [Cita-

---

[6]Petitioner was arraigned and pled guilty in Department 105 of the Los Angeles Municipal Court. In a declaration filed with our court, a deputy city attorney of Los Angeles asserts that it was the regular practice in Department 105 for him, the deputy city attorney, to read to all unrepresented defendants a complete statement of their constitutional rights at the commencement of court proceedings each day. The declaration states that the deputy city attorney would thereafter ask the collected group of defendants if they had any questions about their rights, and if there were no questions, he would distribute written waiver forms which defendants could sign to indicate their awareness of their constitutional rights and their desire to waive such rights through a plea of guilty. The declaration also states, however, that after a thorough search of the court files, the deputy city attorney was unable to find any such written waiver form signed by the present petitioner.

In view of the absence of any evidence demonstrating that the present petitioner was afforded the "benefit" of the described normal procedure, we have no occasion to pass directly on the adequacy of the procedure utilized in department 105. We do note, however, that in the recent case of *Mills* v. *Municipal Court* (L.A. 30117) *ante,* p. 288 [110 Cal.Rptr. 329, 515 P.2d 273] we suggested that the "better practice" would be for the trial judge himself to inform defendants of their constitutional rights. (*Mills* v. *Municipal Court, ante,* at p. 307, fn. 17.) Moreover, whenever a "collective advice" procedure is utilized, the text of the advice that is given should be incorporated in the record. (See, e.g., *Blake* v. *Municipal Court* (1966) 242 Cal. App.2d 731, 733 [51 Cal.Rptr. 771].)

tion.]" (*In re Smiley* (1967) 66 Cal.2d 606, 617 [58 Cal.Rptr. 579, 427 P.2d 179].) ■ Inasmuch as the present record fails explicitly to demonstrate that petitioner was informed of his right to counsel, the present conviction cannot stand.

■ Moreover, the instant record is inadequate to support the challenged conviction on yet another ground. As noted above, past cases have indicated that in addition to advising a defendant of the right to counsel, the trial court has a responsibility to determine, before accepting a defendant's waiver of counsel and plea of guilty, that an unrepresented defendant "understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, [and] the punishments which may be exacted." (*In re Johnson* (1965) 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420], quoting *In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596]; see *People* v. *Hardin* (1962) 207 Cal.App.2d 336, 341-343 [24 Cal.Rptr. 563]; cf. *In re Tahl* (1969) 1 Cal.3d 122, 132, 133, fn. 7 [81 Cal.Rptr. 577, 460 P.2d 449].)[7] Although we have not as yet had occasion to explore the full extent of this responsibility under all circumstances, we conclude that in the instant case, in view of the unusual and onerous nature of the sex registration requirement that follows inexorably from a conviction under section 647, subdivision (a),[8] the trial court's duty surely included an obligation to advise petitioner of this sanction prior to accepting his guilty plea.

Under Penal Code section 290, a person convicted of one of the enumerated offenses, including Penal Code section 647, subdivision (a), must register for life with the police department in the city in which he lives. He must reregister whenever he moves and must report each change of address within 10 days. Individuals convicted of one of the enumerated crimes have been deemed by the Legislature to have a propensity to commit such antisocial crimes in the future and thus are the subject of continual police surveillance. Whenever any sex crime occurs in his area, the registrant may very well be subjected to investigation. Although the stigma of

---

[7]The United States Supreme Court observed over 40 years ago that "[o]ut of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." (*Kercheval* v. *United States* (1927) 274 U.S. 220, 223 [71 L.Ed. 1009, 1012, 47 S.Ct. 582].)

[8]We have noted the severity of this sanction in the past and have overturned convictions of individuals when we believed that the Legislature could not have rationally concluded that such defendants required constant police surveillance to prevent them from committing similar acts in the future. (*In re Smith* (1972) 7 Cal.3d 362, 367 [102 Cal.Rptr. 335, 497 P.2d 807]; *Barrows* v. *Municipal Court* (1970) 1 Cal.3d 821, 825-827 [83 Cal.Rptr. 819, 464 P.2d 483].)

a short jail sentence should eventually fade, the ignominious badge carried by the convicted sex offender can remain for a lifetime.[9]

While petitioner possibly might have suspected that a guilty plea could result in a short jail sentence, we cannot believe that he was aware that as a consequence of urinating in a parking lot at 1:30 in the morning he would be required to register as a *sex offender.* Certainly counsel would have advised him of this grave and direct consequence of his guilty plea; in the absence of counsel the responsibility for such advice rested with the court.[10] Without this advice, we conclude that petitioner's waiver of counsel and plea of guilty cannot be regarded as having been knowingly and intelligently made.

Accordingly, petitioner is entitled to have his judgment of conviction set aside. (See *In re Smiley* (1967) 66 Cal.2d 606, 625 [58 Cal.Rptr. 579, 427 P.2d 179] and cases cited.)

The judgment of the Los Angeles Municipal Court in People v. Birch, No. 719853, rendered on July 27, 1972, is vacated, and the cause is remanded to the municipal court with directions to set aside petitioner's plea of guilty and to proceed in accordance with the views expressed in this opinion.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Kaus, J.,* concurred.

On November 20, 1973, the opinion was modified to read as printed above.

---

[9] Any defendant who has obtained an order of court pursuant to Penal Code sections 1203.4 or 1203.4a, however, is released from any and all penalties and disabiilties of his conviction.

[10] In *In re Leyva* (1970) 8 Cal.App.3d 404 [87 Cal.Rptr. 265], after pleading guilty to a misdemeanor battery charge, petitioner had been committed as a mentally disordered sex offender (MDSO) for an indefinite term. Petitioner thereafter sought release on habeas corpus alleging, inter alia, that his guilty plea was invalid because the trial court had never advised him of the possibility of the MDSO commitment. In *Leyva* the Court of Appeal held that if petitioner could establish the accuracy of his factual allegation, he would be entitled to have his guilty plea set aside.

*Assigned by the Chairman of the Judicial Council.