Douglas Wade KAISER, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C5–00–807.

Supreme Court of Minnesota.

April 18, 2002.

Deborah K. Ellis, St. Paul, Lisa Lodin Peralta, Minneapolis, for appellant.

Mike A. Hatch, Minnesota Attorney General, St. Paul, James C. Backstrom, Dakota County Attorney, Phillip D. Prokopowicz, Assistant County Attorney, Hastings, for respondent.

## OPINION

STRINGER, Justice.

Appellant pleaded guilty to a gross misdemeanor offense without being advised that as a consequence of the plea he was statutorily required to register as a preda-

tory offender. Appellant moved to withdraw his guilty plea and the court denied the motion, concluding that the plea was "accurate, voluntary and intelligent." Appellant then petitioned the court for postconviction relief arguing inter alia that he would not have pleaded guilty if he had been advised of his duty to register as a predatory offender. The district court denied the petition holding that appellant was not entitled to withdraw his guilty plea because the registration requirement was a collateral, and not a direct, consequence of his guilty plea. The court of appeals agreed, holding that the registration requirement constituted a collateral consequence. We affirm.

Appellant Douglas Wade Kaiser was charged with use of minors in a sexual performance, possession of pictorial representations of minors, providing alcohol to minors, and contributing to the delinquency of a minor. Pursuant to an agreement, he pleaded guilty to gross misdemeanor possession of pictorial representations of minors as defined by Minn.Stat. § 617.247, subd. 4 (1996). At the plea hearing the court stayed imposition of sentence and placed appellant on supervised probation for two years with conditions that included a $1,000 fine and no unsupervised contact with juvenile females.[1] When appellant entered his plea, neither the court nor defense counsel advised him of the duty to register as a predatory offender pursuant to Minn.Stat. § 243.166 (1998),[2] and it was not until a court appearance about two months later that a prosecutor advised appellant and the court that registration was a requirement.

Appellant moved to withdraw his plea pursuant to Minn. R.Crim. P. 15.05 claiming manifest injustice because his attorney had not fully advised him of his rights and had told him he had 90 days to withdraw a guilty plea once made.[3] The district court denied his motion, finding that proper care was taken to ensure that appellant understood his plea and therefore his plea was accurate, voluntary and intelligent.

Appellant then petitioned the district court for postconviction relief arguing that his guilty plea and conviction should be set aside because he was not advised of his duty to register as a predatory offender, which he characterized as the "most onerous, most serious" consequence of the plea,

---

1. Imposition of sentence was initially stayed, but after probation violations the district court sentenced appellant to 91 days in the county jail. Appellant challenged his sentence on due process and abuse of discretion grounds in an appeal separate from this appeal. The sentence was affirmed by the court of appeals in an unpublished opinion. *State v. Kaiser*, No. C8–99–406, 1999 WL 993998, at *1 (Minn.App. Nov.2, 1999).

2. Minnesota Statutes § 243.166, subd. 1(a) (1998) provides:

    A person shall register under this section if: * * * (2) the person was charged with or petitioned for * * * possessing pictorial representations of minors in violation of section 617.247, and convicted of or adjudicated delinquent for that offense or another offense arising out of the same set of circumstances * * *.

    In 1998, gross misdemeanor possession of pictorial representations of minors was one of the enumerated offenses listed in the predatory offender statute, Minn.Stat. § 243.166. A subsequent amendment made possession of child pornography a felony. Act of May 24, 1999, ch. 217, § 9, 1999 Minn. Laws 1368, 1371 (codified as amended at Minn.Stat. § 617.247, subd. 4 (2000)). Appellant's guilty plea triggered a duty to register as a predatory offender with law enforcement.

3. Appellant stated in an affidavit that had he been advised of the registration duty before entering a plea he would not have pleaded guilty.

that he received ineffective assistance of counsel, and that there was no factual basis to support his plea. The district court denied relief on all grounds concluding that the registration requirement "is not punishment for a crime, but is merely a safeguard for the community; thus, it is a collateral and not a direct consequence to a plea of 'guilty.'"

The court of appeals affirmed the postconviction order on each issue, holding that the registration requirement is a collateral consequence of a guilty plea because an intervening act of discretion is required to determine whether to prosecute for failure to register and because the requirement to register is primarily regulatory rather than punitive. *Kaiser v. State*, 621 N.W.2d 49, 54–55 (Minn.App.), *rev. granted* (Minn. Mar. 13, 2001). We granted review only on the issue of whether the predatory offender registration requirement is a direct or collateral consequence of a guilty plea.

■ Appellant contends that the registration requirement is a direct consequence of a guilty plea because the duty to register flows definitely, immediately and automatically from the guilty plea. Further, appellant argues that direct consequences need not relate only to the maximum sentence or fine imposed on a defendant and that whether a sanction is punitive or regulatory in nature is separate from whether it is a direct or collateral consequence. The state responds that because prosecution for failure to register depends on prosecutorial discretion, the consequence does not flow definitely, immediately or automatically from a guilty plea and sentence, and because the duty to register does not constitute punishment, it is not a direct consequence of a guilty plea.

■ We begin our analysis recognizing that a defendant does not have an absolute right to withdraw a guilty plea. *Shorter v. State*, 511 N.W.2d 743, 746 (Minn.1994). Public policy favors the finality of judgments and courts "'are not disposed to encourage accused persons to "play games" with the courts'" by setting aside judgments of conviction based upon pleas made with deliberation and accepted by the court with caution. *Chapman v. State*, 282 Minn. 13, 16, 162 N.W.2d 698, 700 (1968) (quoting *Everett v. United States*, 336 F.2d 979, 984 (D.C.Cir.1964)). The Minnesota Rules of Criminal Procedure provide however, that a plea of guilty may be withdrawn "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R.Crim. P. 15.05, subd. 1.

■ A valid guilty plea must meet three requirements: it must be accurate, voluntary, and intelligent. *Perkins v. State*, 559 N.W.2d 678, 688 (Minn.1997). Manifest injustice occurs if any of these three requirements have not been met. *Id.* Appellant's claim here is that because he was not informed of the duty to register as a predatory offender, his plea was not intelligent. We held in *State v. Trott* that "[t]he purpose of the requirement that the plea be intelligent is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." 338 N.W.2d 248, 251 (Minn. 1983). A defendant need not be advised of *every* consequence for his plea to be intelligent, however. We held in *Alanis v. State* that "it is the direct consequences of the guilty plea to which we refer" and ruled that deportation was not a direct consequence. 583 N.W.2d 573, 578 (Minn.1998).

Therefore failure of the court to advise the defendant of deportation consequences was not grounds for withdrawal of his plea: "[i]gnorance of a collateral consequence does not entitle a criminal defendant to withdraw a guilty plea."[4] *Id.* We elaborated on the reasoning behind our holding:

> It makes sense that direct consequences are those which flow definitely, immediately, and automatically from the guilty plea—the maximum sentence and any fine to be imposed. Further, it makes sense that deportation is not a direct consequence of the guilty plea because deportation is neither definite, immediate, nor automatic.

*Id.* (footnote omitted).

Here the court of appeals interpreted this language to mean that "[t]he distinction between direct and collateral consequences * * * turns on whether the result adds a definite, immediate, and automatic effect to the defendant's punishment." *Kaiser*, 621 N.W.2d at 53. Since, in its view, the predatory offender registration requirement did not add to appellant's punishment, and the consequences were not definite, immediate, and automatic, the consequence was collateral. *Id.* at 54. We disagree with the ruling of the court of appeals that the duty to register as a predatory offender is not definite, immediate and automatic because the offender is required to register immediately, definitely and automatically upon entering a guilty plea. The court of appeals was correct however, in concluding that because the predatory offender registration is not a punitive consequence, it is collateral in nature.

In *Alanis* we held that direct consequences are those related to punishment that flow definitely, immediately and automatically from the plea, and that direct consequences were the maximum sentence and fine, as they flow definitely, immediately and automatically from the punishment to be imposed.[5] 583 N.W.2d at 578–79 ("[D]irect consequences of making the plea, that being the maximum sentence and the amount of any fine to be imposed."). They are the consequences the defendant must face for his criminal conduct.[6]

The dissent of Justice Page argues that this case is governed by our decisions in *State v. Jumping Eagle*, 620 N.W.2d 42 (Minn.2000); *State v. Brown*, 606 N.W.2d 670 (Minn.2000); and *State v. Garcia*, 582 N.W.2d 879 (Minn.1998). In these cases,

---

4. After holding in *Alanis* that deportation consequences are collateral to a guilty plea, we amended Minn. R.Crim. P. 15.01, which enumerates the questions a pleading defendant is to be asked before a court accepts a guilty plea, to include whether the defendant understands the possible deportation consequences.

5. The dissent of Justice Paul H. Anderson concludes without elaboration that appellant's guilty plea was unintelligent because the duty to register is a "direct, immediate, and automatic" consequence of the plea. In doing so the dissent mistakes both the language of and the principle underlying *Alanis*, where we held that direct consequences are those related to punishment that flow definitely, immediately and automatically from the plea. *See Alanis*, 583 N.W.2d at 578–79.

6. Numerous decisions from state and federal courts establish that a direct consequence is one that has a definite, immediate and automatic effect on the range of a defendant's punishment. *See, e.g., Parry v. Rosemeyer*, 64 F.3d 110, 114 (3rd Cir.1995); *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir. 1973), *State v. Andrews*, 253 Conn. 497, 752 A.2d 49, 55 (2000); *see also State v. Young*, 112 Ariz. 361, 542 P.2d 20, 22 (1975); *Ray v. State*, 133 Idaho 96, 982 P.2d 931, 935 (1999); *State v. Pickens*, 558 N.W.2d 396, 400 (Iowa 1997).

we held that when a trial court accepts a guilty plea without informing a defendant that his sentence is subject to a mandatory conditional release term that would have the effect of increasing his sentence beyond the upper limit of his court—accepted plea agreement, the sentencing court must choose either to modify the defendant's sentence so that it does not exceed the upper limit of the plea agreement or to allow the defendant to withdraw his guilty plea. *See Jumping Eagle,* 620 N.W.2d at 44–45. In those cases the consequence at issue was the length of actual incarceration the defendant faced—the essence of an offender's punishment. This case is fundamentally different. Here, the consequence of registering as a predatory offender involves no additional incarceration and has no relation to appellant's punishment.

Consequences flowing from the plea that are not punishment serve a substantially different purpose than those that serve to punish, as they are civil and regulatory in nature and are imposed in the interest of public safety. Consequences such as the revocation of driving privileges following a conviction for driving under the influence,[7] or loss of the right to possess a firearm following the conviction of violent felonies,[8] serve to protect the public from a poten-tially dangerous class of persons and are collateral, not direct, consequences of the sentences imposed.

With regard to the predatory offender registration statute, in *Boutin v. LaFleur,* 591 N.W.2d 711 (Minn.1999), we held that the statute was civil and regulatory, and not penal, because it did not have the fundamental characteristics of punishment set out by the United States Supreme Court in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).[9] *Boutin,* 591 N.W.2d at 717. Applying the *Kennedy* analysis in *Boutin* we noted that the predatory offender statute does not require an affirmative restraint, that historically similar registration statutes have not been regarded as punishment, that it does not promote the traditional aims of punishment because it does not involve confinement and is not intended to exact retribution, and that the primary purpose of the statute is to create an offender registry to assist in law enforcement investigations. *Boutin,* 591 N.W.2d at 717. It is an expression of a policy statement—"society has the right to know of [predatory offenders'] presence not in order to punish them, but in order to protect itself." *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 373 (1995).[10] As statutes

7. *See, e.g., State v. Washburn,* 602 N.W.2d 244, 246 (Minn.App.1999).

8. *See, e.g., State v. Rodriguez,* 590 N.W.2d 823, 825 (1999), *rev. denied* (Minn. May 26, 1999).

9. *Kennedy* established an analytical framework for determining whether a statute is penal or regulatory and outlined the factors to be considered, such as whether (1) it involves an affirmative disability or restraint, (2) it has historically been regarded as a punishment, (3) it comes into play only on a finding of *scienter,* (4) its operation will promote the traditional aims of punishment—retribution and deterrence, (5) the behavior to which it applies is already a crime, (6) an alternative purpose to which it may rationally be connected is assignable for it, and (7) it appears excessive in relation to the alternative purpose assigned. *Kennedy,* 372 U.S. at 168–69, 83 S.Ct. 554.

10. The *Poritz* court elaborated:

[A] statute that can fairly be characterized as remedial, both in its purpose and implementing provisions, does not constitute punishment even though its remedial provisions have some inevitable deterrent impact, and even though it may indirectly and adversely affect, potentially severely, some of those subject to its provisions. Such a

criminalizing the possession of firearms by convicted felons,[11] or revoking driving privileges after a conviction for driving under the influence, require offenders to obey special regulations, the predatory offender law seeks to increase public safety by requiring a specific class of offenders to provide information to law enforcement authorities to assist in keeping track of them.[12]

The argument in the dissent of Justice Page that the sentence was unauthorized by law and illegal is incorrect. Section 243.166, subd. 2 provides that when an offender is sentenced for an enumerated offense he must be notified of his duty to register, and while notice "shall" be provided by the sentencing court advising the person of his duty to register, the statute also provides that if the court does not notify the defendant, "the assigned corrections agent shall notify the person of the requirements of [the registration statute]."[13] *Id.* Clearly the legislature was less concerned that the court provide the registration advisory than it was that the offender receive some advisory of his duty. But given the alternative method of notification under the statute, it can hardly be concluded that failure of the court to advise the offender infringes on his rights

---

law does not become punitive simply because its impact, in part, may be punitive unless the only explanation for that impact is a punitive purpose: an intent to punish. *Poritz*, 662 A.2d at 388.

**11.** Many courts in other jurisdictions have concluded that restriction of the right of convicted felons to possess firearms is a legitimate exercise of police power rationally related to governmental interest in securing public safety. *See, e.g., United States v. Huss*, 7 F.3d 1444, 1448 (9th Cir.1993), *overruled on other grounds by United States v. Sanchez–Rodriguez*, 161 F.3d 556, 564 (9th Cir.1998); *State v. Olvera*, 191 Ariz. 75, 952 P.2d 313, 315 (1997); *People v. Tice*, 220 Mich.App. 47, 558 N.W.2d 245, 247 (1996); *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918, 924 (2001); *State v. Thiel*, 188 Wis.2d 695, 524 N.W.2d 641, 645 (1994);

**12.** Of the states that have addressed whether sex offender registration is a direct or collateral consequence of a plea, many have reasoned that the registration is a collateral consequence because it is not part of the defendant's punishment. *See, e.g., Ray*, 982 P.2d at 935, *State v. Ward*, 123 Wash.2d 488, 869 P.2d 1062, 1076 (1994); *State v. Bollig*, 232 Wis.2d 561, 605 N.W.2d 199, 206 (2000); *Johnson v. State*, 922 P.2d 1384, 1387 (Wyo.1996); *cf. Peterson v. State*, 988 P.2d 109, 115 (Alaska Ct.App.1999); *In re Birch*, 10 Cal.3d 314, 110 Cal.Rptr. 212, 515 P.2d 12, 16–17 (1973).

Rule 11 of the Federal Rules of Criminal Procedure mandates that before accepting a plea of guilty, a federal district court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands:

> [T]he nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense.

Fed R.Crim. P. 11(c)(1). The rule notably does not require the court to inform the defendant of any criminal registration requirement. Few federal courts have ruled on whether sex offender registration is a direct or collateral consequence. *See, e.g., Roe v. Farwell*, 999 F.Supp. 174, 182–83 (D.Mass. 1998) (finding Massachusetts' sex offender registration provision to be a collateral consequence of guilty plea).

**13.** The dissent of Justice Paul Anderson also emphasizes the mandatory "shall" reference in Minn.Stat. § 243.166, subd. 2, but fails to address the significance of the corrections agent as an alternative source of notification under the statute.

and most certainly does not render the sentence illegal, as the dissent of Justice Page argues.

■ It is also significant that notice can be provided by an employee of the Department of Corrections, an executive branch agency, if the court fails to do so, because if notice were a direct consequence of the offense, it would be the responsibility of the court to advise the offender of the duty to register. Imposition of a sentence rests solely with the trial court. *See State v. Olson*, 325 N.W.2d 13, 18 (Minn.1982).

The regulatory non-punitive nature of the statute is further reflected in its clear purpose—to keep law enforcement informed as to a predatory offender's whereabouts. The offender must comply with three requirements: first, the offender must submit a fingerprint card and a photograph to his assigned corrections agent or law enforcement authority and must submit a signed registration form providing information about the offender's whereabouts. Minn.Stat. § 243.166, subd. 4 (1998).[14] Second, the offender must timely sign and return an information verification form, either annually or quarterly, depending on the nature of the offense. *Id.*, subd. 4(c)(*l*). Finally, the offender

must notify law enforcement officials in writing at least five days prior to any change of address. *Id.*, subd. 3(b). Registration for appellant was imposed for ten years.[15]

■ We hold that definite, immediate and automatic consequences must be punitive and a part of a defendant's sentence in order to constitute direct consequences for purposes of establishing manifest injustice to withdraw a guilty plea. The duty to register as a predatory offender is a regulatory rather than punitive consequence and therefore is a collateral consequence of appellant's guilty plea. Failure to advise appellant of the registration requirement does not make the plea unintelligent, and does not constitute a manifest injustice that mandates the withdrawal of his plea.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent.

## I.

Because Kaiser's sentence was induced by the promise of a sentence unauthorized by law, I believe the voluntariness of his

---

14. Under the current statute, an offender must also provide the addresses of all property owned, leased or rented by the offender, the addresses of the offender's places of employment, and a description of all motor vehicles owned or driven by the offender. *See* Minn.Stat. § 243.166, subd. 4a (Supp.2001).

15. When compared with the prospect of deportation and other consequences that have been held collateral in Minnesota courts, *see, e.g., Kim v. State*, 434 N.W.2d 263, 264–66 (Minn.1989) (concluding that forced resignation from a position as officer of a corporation is a collateral consequence of a guilty plea); *Rodriguez*, 590 N.W.2d at 825 (concluding that loss of right to possess a firearm

is a collateral consequence of a guilty plea); *Washburn*, 602 N.W.2d at 246 (concluding that revocation of driving privileges is a collateral consequence of a guilty plea), we question how onerous the duty to keep the police informed of one's address by returning a postcard once a year is on appellant. We note, and appellant concedes, that the community notification aspects of the sexual offender scheme do not apply to this case. As the dissent notes, under the current statute information about level I offenders like appellant is made public only if the offender fails to register as a predatory offender. *See* Minn. Stat. § 243.166, subd. 7a (2000).

plea of guilty was compromised. *See State v. Jumping Eagle*, 620 N.W.2d 42, 43 (Minn.2000) (stating that " '[t]he voluntariness requirement insures that the guilty plea is not in response to improper pressures or inducements' ") (citation omitted); *State v. Brown*, 606 N.W.2d 670, 674 (Minn.2000) ("Where a sentence is illegal and therefore invalidly imposed, the voluntariness of the plea is drawn into question."). Minnesota Statutes § 243.166, subd. 2 (1998), provides:

> When a person who is required to register under subdivision 1, paragraph (a), is sentenced * * *, the court shall tell the person of the duty to register under this section. The court shall require the person to read and sign a form stating that the duty of the person to register under this section has been explained. If a person required to register under subdivision 1, paragraph (a), was not notified by the court of the registration requirement at the time of sentencing or disposition, the assigned corrections agent shall notify the person of the requirements of this section. When a person who is required to register under subdivision 1, paragraph (c), is released from commitment, the treatment facility shall notify the person of the requirements of this section.

*Id.* Based on the statute's repeated use of the directive "shall," the plain language of the statute indicates clearly that sex offender registration must be included in the sentence of every sex offender covered by Minn.Stat. § 243.166, subd. 2. Therefore, like the statutory provisions requiring a conditional release term for certain sex offenders, *see generally State v. Humes*, 581 N.W.2d 317 (Minn.1998), the statutory provisions requiring registration of sex offenders are mandatory and nonwaivable.

It is this mandatory and nonwaivable character of the requirement to register as a sex offender that calls into question the validity of guilty pleas made without mention of that requirement at the time pleas are entered. *See Brown*, 606 N.W.2d at 674 (addressing the mandatory character of conditional release terms).

In *State v. Garcia*, 582 N.W.2d 879 (Minn.1998), we recognized that sentences that fail to contain terms that the legislature has mandated are illegal. *Id.* at 881. Although we cannot uphold, through the remedy of specific performance, a sentence that a court had no authority to impose in the first place, we may allow withdrawal of the plea if appropriate. *See Brown*, 606 N.W.2d at 674. The withdrawal of a guilty plea is permissible when part of the inducement or consideration for the defendant's guilty plea was the very absence of the mandatory and nonwaivable term. *See id.; Jumping Eagle*, 620 N.W.2d at 44–45.

In this case, Kaiser was promised a particular sentence, including certain conditions, in exchange for a plea of guilty to possession of pictorial representations of minors in violation of Minn.Stat. § 617.247, subd. 4 (1996). Missing from those conditions was the sex offender registration requirement of Minn.Stat. § 243.166, subd. 2. Moreover, at Kaiser's sentencing hearing, the district court in violation of that section failed to include the sex offender registration requirement. This modification of his sentence was illegal.

Kaiser asserts that he was not informed of the registration requirement before he entered the guilty plea and that, had he known of the requirement, he would not have entered the plea. Thus, this court should not presume that Kaiser would have considered the requirement insignificant in the negotiation of his plea. *See*

*Jumping Eagle*, 620 N.W.2d at 44 (concluding that, because the defendant in that case appeared to have considered the maximum executed sentence significant in the negotiation of his plea, the addition of a conditional release term, which would have then exceeded the upper limit of his court-accepted plea petition, violated his plea agreement).

As in *Garcia*, the unqualified promise that Kaiser received and consequently accepted was unauthorized by law, and Kaiser must be allowed to withdraw from the plea agreement if he so chooses. If he does not so choose, Kaiser should be permitted to continue to be bound by the original plea agreement, as amended to include sex offender registration required by law.

## II.

In concluding that sex offender registration is not a direct consequence of a guilty plea, the court relies heavily on language from our decision in *Alanis v. State*, 583 N.W.2d 573 (Minn.1998). In doing so, the court misapplies what we said in *Alanis* concerning direct consequences, while at the same time misconstruing the character of the sex offender registration statute. As the court notes, Kaiser's claim here is that his plea of guilty was not intelligent because, when he entered his plea, neither the court nor defense counsel informed him that he would have to register as a sex offender. For a guilty plea to be intelligent, a criminal defendant must be aware of the direct consequences of pleading guilty. *Id.* at 578. Direct consequences

are those that flow definitely, immediately, and automatically from the criminal defendant's plea of guilty. *Id.* Interestingly, the court concedes that the requirement that Kaiser register as a sex offender flows definitely, immediately, and automatically from his guilty plea: "We disagree with the ruling of the court of appeals that the duty to register as a predatory offender is not definite, immediate and automatic because the offender is required to register immediately, definitely and automatically upon entering a guilty plea."

Having reached that conclusion, the court then curiously goes on to conclude that sex offender registration is not a direct consequence of Kaiser's guilty plea because the only direct consequences are those that flow from the punishment to be imposed. That is not, however, what *Alanis* says. *Alanis* says that "[i]t makes sense that direct consequences are those which flow definitely, immediately, and automatically from the guilty plea—the maximum sentence and any fine to be imposed."[16] 583 N.W.2d at 578. The quoted statement plainly provides that direct consequences flow from the guilty plea, not the punishment. The factual detail of that statement cannot be read to limit direct consequences to the punishment to be imposed. Had it been intended, as the court now suggests, to limit what constitutes a direct consequence, there would have been no need in *Alanis* to go on to analyze whether deportation—being neither sentence nor fine—was a definite, immediate, and automatic consequence of Alanis's plea of guilty. We proceeded to go through that analysis, however, because we were

16. Although there was no fine in *Alanis*, the opinion refers to a fine as a type of direct consequence because a fine was involved in *Barragan v. State*, 583 N.W.2d 571 (1998) (relying on *Alanis*), a case decided on the same day as *Alanis*. *Barragan*, 583 N.W.2d at 571, 573 n. 4. Therefore, this reference to fines cannot be interpreted as limiting the scope of what constitutes a direct consequence.

focused not on the aspects of punishment, but on whether the consequences were indeed definite, immediate, and automatic.

Sex offender registration is a direct consequence of the offender's guilty plea if for no other reason than Minn.Stat. § 243.166, subd. 2, makes it so. As discussed above, that section makes registration mandatory in all cases without exception. It also makes clear that the requirement may not be modified. As a mandatory and non-waivable requirement of section 243.166, subdivision 2, sex offender registration becomes a direct consequence once a plea is entered, irrespective of its nonpunitive nature.

Further, the fact that the legislature has made sex offender registration mandatory and non-waivable and tied that requirement directly to the offender's sentence makes it different in character from non-punitive consequences such as deportation, revocation of driving privileges, and loss of the right to possess a firearm, which have been held to be collateral. Those consequences are not necessarily definite, immediate, or automatic. *See Alanis,* 583 N.W.2d at 578–79 (concluding that deportation is not a direct consequence because, before deportation can occur, the INS must exercise discretion to commence deportation proceedings and must follow various administrative procedures); *State v. Rodriguez,* 590 N.W.2d 823, 825 (Minn. App.), *rev. denied* (Minn. May, 26 1999) (concluding that loss of the right to possess a firearm is collateral because the federal government's decision to prosecute for felon in possession is independent of anything a state court does); *State v. Washburn,* 602 N.W.2d 244, 246 (Minn. App.1999) (concluding that revocation of driving privileges is collateral because such revocation depends on an action by the

Minnesota Department of Public Safety). Nor do nonpunitive consequences such as deportation, revocation of driving privileges, and the loss of the right to possess a firearm require affirmative acts as sex offender registration does.

Sex offender registration is also different in character because it can have a direct impact on daily life in ways that even incarceration does not. Sex offender registration obligates the offender to inform state authorities of address changes for at least ten years and may include mandatory community notification. The court ignores the fact that community notification is mandatory for Level III offenders, Minn.Stat. § 244.052, subd. 4, subd. 4b (2000), and may be required for Level I offenders, Minn.Stat. § 243.166, subd. 7a (2000) (allowing community notification for Level I offenders who fail to register or maintain their registration as required by law). It goes without saying that community notification can take the sex offender registrant "out of the ordinary relations with humanity" by adversely affecting his or her personal and professional life, employability, associations with neighbors, and choice of housing. Nathaniel Hawthorne, *The Scarlet Letter* 44 (Courage Books 1991) (1850); *see Artway v. Attorney General of N.J.,* 876 F.Supp. 666, 686–87 (D.N.J.1995), *aff'd in part and vacated in part,* 81 F.3d 1235 (3d Cir.), *reh'g denied,* 83 F.3d 594 (1996) (employability and associations with neighbors); *Rowe v. Burton,* 884 F.Supp. 1372, 1378 (D.Alaska 1994), *appeal dismissed,* 85 F.3d 635 (9th Cir.1996) (personal and professional lives); *State v. Myers,* 260 Kan. 669, 923 P.2d 1024, 1041 (1996), *cert. denied,* 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997); *Noble v. Bd. of Parole & Post–Prison Supervision,* 327 Or. 485, 964 P.2d 990, 995–96 (1998). As a result of commu-

nity notification, a sex offender registrant also may be the target of vigilantism and possible physical violence. *See Noble*, 964 P.2d at 995–96; *see, e.g., Doe v. Pataki*, 940 F.Supp. 603, 608–11 (S.D.N.Y.1996), *aff'd in part, rev'd in part*, 120 F.3d 1263 (2d Cir.1997), *cert. denied*, 522 U.S. 1122, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367, 430–31 (1995) (Stein, J., dissenting). Therefore, although a direct consequence need not be punitive, the implications and magnitude of sex offender registration are on par with the court's unduly narrow view of the term punishment.

Sex offender registration is a direct consequence of a plea of guilty and, as such, Kaiser should have been informed of the duty to register. As the court itself states, "If a defendant is advised of the price he must pay for his criminal conduct, his plea cannot be said to be unintelligent and cannot be withdrawn." Because Kaiser was not advised of the price he must pay for his criminal conduct as required by Minn. Stat. § 243.166, his plea of guilty was not intelligent. Therefore, I would reverse the court of appeals and remand to the district court for further proceedings.

PAUL H. ANDERSON, Justice (dissenting).

I respectfully dissent. I write separately because I conclude that both the majority opinion and Justice Page's dissent miss the mark in their respective interpretations of the sex offender registration statute.

While I agree with much of what Justice Page says in his separate dissent, I do not join Justice Page because I conclude that in Part I he has gone too far in interpreting the sex offender registration *notice* requirement. I do not believe that it is necessary to reach this issue in order to decide the case before us. But even if we were required to reach this issue, I do not agree that the plain language of Minn.Stat. § 243.166, subd. 2 (1998), clearly indicates that the sex offender registration requirement must be included in the sentence of every sex offender.

Similarly, I cannot agree with the majority's interpretation of the notice requirement because its interpretation goes too far in the other direction. Inexplicably, the majority concludes that the sentencing court is not required to notify a sex offender of his or her duty to register even though the statute explicitly states that "the court *shall* tell the [sex offender] of the duty to register." Minn.Stat. § 243.166, subd. 2 (emphasis added). The plain language of the statute absolutely requires that the sentencing court notify a sex offender of the registration requirement. However, I find nothing in that statute that requires this notice to be part of the sentence itself.

I also write separately to emphasize my disagreement with the majority regarding the nature of the sex offender registration requirement. As I have noted in the past, sex offender registration is a serious consequence that should not be imposed without strict adherence to the procedural requirements of the law. *Boutin v. LaFleur*, 591 N.W.2d 711, 720 (Minn.1999) (Anderson, Paul H., J., dissenting). Further, we have held that an important procedural requirement under the laws of this state is that a guilty plea must be accurate, voluntary, and intelligent. *Perkins v. State*, 559 N.W.2d 678, 688 (Minn.1997). For a guilty plea to be intelligent, a defendant must be advised of the direct consequences of his plea. *Alanis v. State*, 583

N.W.2d 573, 578 (Minn.1998). I agree with Justice Page's interpretation of *Alanis* and his conclusion that the registration requirement is a definite, immediate, and automatic consequence of pleading guilty to Minn.Stat. § 617.247, subd. 4 (1996). Accordingly, Kaiser's guilty plea was not intelligent and he should be allowed to withdraw the plea. Therefore, I would reverse the court of appeals and remand to the district court for further proceedings. Furthermore, in light of the conclusion reached by the majority today, I strongly urge that the court direct the Advisory Committee on the Rules of Criminal Procedure to consider a proposal to amend the criminal rules to provide that a sentencing court "shall" notify a sex offender of the registration requirement.