*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2207**

David Laurence Hodges, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 21, 2014
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62-CR-10-6204

Cathryn Middlebrook, Chief Appellate Public Defender, Sean Michael McGuire, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant Ramsey County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant challenges the postconviction court's denial of his request for plea

withdrawal or sentence modification, arguing that his plea was not intelligent, the district court failed to conduct a competency inquiry before accepting his plea, and the district court improperly viewed photographs that were not placed in the record when sentencing him. We affirm.

## FACTS

In August 2010, respondent State of Minnesota charged appellant David Laurence Hodges in Ramsey County with first-degree criminal sexual conduct. Hodges also had criminal charges pending in Hennepin County. Hodges negotiated a plea agreement with the prosecuting authorities in Ramsey and Hennepin counties to resolve all of his pending cases. Hodges appeared in Ramsey County district court and agreed to plead guilty to the Ramsey County offense. Under the plea agreement, Hodges would be sentenced for the Ramsey County offense after sentencing in the Hennepin County case. His Ramsey and Hennepin County sentences would be concurrent. His plea to the Ramsey County offense would not be accepted if he did not enter a valid guilty plea in Hennepin County. If the Ramsey County sentence was less than 260 months, "any pleas and/or sentencings that have already occurred would be vacated." A second charge in Hennepin County would be dismissed. Lastly, the state would recommend a 306-month sentence for the Ramsey County offense. The record indicates that the parties and district court believed that Hodges had a criminal-history score of five and that the presumptive sentencing range for the Ramsey County offense was 260-360 months in prison.

After Hodges proffered his guilty plea to the Ramsey County offense, the Ramsey County district court set the case for a sentencing hearing without accepting the plea.

2

Later, at the sentencing hearing, the prosecutor informed the district court that Hodges did not have a custody-status point as anticipated. The prosecutor explained that

> [w]e agreed that we would be arguing within a range of 260 to 306 months, and . . . as things have turned out, the top of the box for this offense is 281 months, which is within the range we anticipated. So the [s]tate is recommending that the [c]ourt sentence at the top of the box in this matter, concurrent with the Hennepin County offense.

Hodges did not object to use of the new sentencing range, request a continuance, or ask to withdraw his plea.

The prosecutor further explained that one reason "why we're recommending top of the box rather than middle" was "the nature of the injuries and the particular cruelty that we see." Then the prosecutor stated:

> And towards that—I'm not going to put these into evidence because I don't necessarily want them in the [c]ourt file, but if I could approach and just show the [c]ourt a couple of pictures that I think the court probably has not seen, and it just indicates the injuries that were sustained in this case. And again, because we are within the guidelines range I'm not going to put these in the court file. . . . I wanted the court to just have an idea. Those photos were taken on the day of the offense, February 3rd.

Hodges did not object to the prosecutor's request that the district court view the photographs. Nor did he ask the district court to include the photographs in the court record.

The district court accepted Hodges's guilty plea and sentenced him to 281 months in prison. The district court stated:

> There's no question in my mind that that sentence is warranted. It is within the guidelines. It is the top of the box.

3

> It is based on—I mean, I don't need to have reasons because it's within the guidelines, but there certainly was some aggravating factors in this matter that could have been found by a jury and the [s]tate agreed not to submit them to a jury.

Hodges did not object to the district court's acceptance of his plea, or to the sentence imposed. It was later discovered that the maximum guidelines sentence was 280 months, and the district court amended the sentence in accordance.

Nearly two years after the sentencing hearing, Hodges petitioned for postconviction relief, seeking to withdraw his guilty plea or modify his sentence on three grounds: (1) his plea was invalid because he was not mentally sound and the district court "never asked whether he was mentally competent"; (2) "[i]n actuality, his criminal history score . . . supported a sentencing range of 199-280 months," and "[w]hen he decided to plead guilty, his attorney did not inform him of the correct sentencing range"; and (3) at sentencing, the district court reviewed photos of the victim's injuries, which "were never submitted as evidence and are not contained in the court record" and "without these photographs being placed in the court record, appellate review is frustrated." The district court summarily denied Hodges's petition for postconviction relief. This appeal follows.

## DECISION

In reviewing a postconviction court's decision to grant or deny relief, issues of law are reviewed de novo and issues of fact are reviewed for sufficiency of the evidence. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007).

4

**I.**

Hodges argues that because he "did not understand that the guidelines actually called for a lower sentencing range, his plea was invalid and should have been vacated." "A defendant does not have an absolute right to withdraw a valid guilty plea." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). Guilty pleas may be withdrawn only if one of two standards is met. *See* Minn. R. Crim. P. 15.05 (2014) (setting forth the manifest-injustice and fair-and-just standards for plea withdrawal). Hodges's argument for plea withdrawal is based on the manifest-injustice standard.

The district court must allow plea withdrawal at any time "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." *Id*., subd. 1. A manifest injustice exists if a guilty plea is not valid. *Theis*, 742 N.W.2d at 646. To be constitutionally valid, a guilty plea must be "accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994).

> The accuracy requirement protects the defendant from pleading guilty to a more serious offense than he or she could be properly convicted of at trial. The voluntariness requirement insures that the guilty plea is not in response to improper pressures or inducements; and the intelligent requirement insures that the defendant understands the charges, his or her rights under the law, and the consequences of pleading guilty.

*Carey v. State*, 765 N.W.2d 396, 400 (Minn. App. 2009) (quotation omitted), *review denied* (Minn. Aug. 11, 2009). "A defendant bears the burden of showing his plea was invalid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). The validity of a plea is a question of law that we review de novo. *Id*.

5

Hodges argues that his "plea was not intelligent because he was misinformed about the guideline sentencing range for this offense." "A defendant need not be advised of every consequence for his plea to be intelligent." *Kaiser v. State*, 641 N.W.2d 900, 903 (Minn. 2002) (emphasis omitted). To meet the constitutional threshold, a defendant need only be advised of the maximum sentence and any fine to be imposed. *Id*. at 904. Hodges contends that "the maximum sentence allowed by law is not the statutory maximum, but the maximum sentence under the guidelines," and argues that his guilty plea is invalid because the maximum sentence under the guidelines was actually lower than what he was told.

In *State v. DeZeler*, the supreme court held that the district court "should have allowed [a] defendant to withdraw his plea" when it was discovered that the parties made a "mutual mistake as to what [the] defendant's criminal history score was." 427 N.W.2d 231, 235 (Minn. 1988). But in *DeZeler*, the defendant was sentenced to 34 months in prison after he pleaded guilty believing that the presumptive sentence was either 27 or 30 months stayed. *Id*. at 232-33. Here, Hodges was sentenced to 280 months, which was within the guidelines range that the parties believed was applicable when Hodges pleaded guilty. Hodges offers no authority to support his proposition that a manifest injustice occurs when a mutual mistake results in a sentence that is within the range contemplated at the time of the guilty plea and that is *consistent* with the original plea agreement. *See Raleigh*, 778 N.W.2d at 94 ("A defendant bears the burden of showing his plea was invalid.").

In his pro se supplemental brief, Hodges argues that because he was told he faced a greater maximum sentence than he actually did, he was "misinformed . . . of the risks he faced by going to trial as compared to the risks he faced under the plea," which served to "[]influence [him] to plea[d] guilty instead of stand trial on the lesser maximum penalty." But in this case, the state filed a notice of intent to seek an aggravated sentence, in which it stated it intended to prove that Hodges "treated the victim with particular cruelty by inflicting extreme injury and leaving the victim outside in extremely cold temperatures." Because the state was seeking an upward durational departure, the risk Hodges faced by going to trial was not limited to the top of the guidelines range. *See Dillon v. State*, 781 N.W.2d 588, 596 (Minn. App. 2010) (stating that when imposing an upward departure "a court generally should not increase a sentence's length beyond twice the presumptive sentence," but noting that "there may well be rare cases in which the facts are so unusually compelling that an even greater degree of departure will be justified" (quotation omitted)), *review denied* (Minn. July 20, 2010). Thus, contrary to Hodges's assertion, plea withdrawal would not allow him to "stand trial on [a] lesser maximum penalty."

Hodges also argues that if he "was correctly told the actual low end and high end of the charged offense . . . his sentencing strategy [would have] changed." Hodges speculates that because the state recommended "the middle of the box" when the parties believed his criminal-history score was five, if his plea was withdrawn, the state would "shift" its recommendation to the middle of the guidelines range based on a criminal-history score of four, which would "place [him] at the 234 month score range."

Assuming, for the sake of argument, that the state would recommend a shorter sentence based on the reduced criminal-history score if Hodges's plea were withdrawn, Hodges does not explain how this situation creates a manifest injustice requiring plea withdrawal where the district court is not bound by a sentence recommendation and could simply again sentence him to 280 months in prison. *See Perkins v. State*, 559 N.W.2d 678, 687 (Minn. 1997) ("If . . . the sentencing court rejects a mere recommendation made pursuant to an agreement, then the defendant may not withdraw the plea unless the defendant can establish either (a) that the defendant mistakenly believed he or she could withdraw the plea if the sentencing court rejected the recommendation, or (b) that there is some other ground for withdrawal." (quotation omitted)). Nor does Hodges address his hypothetical in the context of the *entire* plea agreement, which encompassed charges in Hennepin County and included a requirement that he receive a sentence of at least 260 months for the Ramsey County offense.

In sum, the parties' mutual mistake regarding the presumptive sentencing range did not render Hodges's plea unintelligent where the actual range was lower than the anticipated range and the resulting sentence was within the anticipated range.

## II.

Hodges argues that he "was denied his constitutional right to due process when the district court failed to ensure that he was competent to proceed before accepting his guilty plea and sentencing him." Hodges points out that "there was a competency proceeding" in this case and "[he] was found to be competent" approximately seven months before the sentencing hearing. Hodges contends that because his "mental health was a known

8

concern, the court, to be vigilant and ensure [his] competency, should have inquired about his mental state at the time of the plea."

Under Minnesota Rule of Criminal Procedure 20.01, "[a] defendant is incompetent and must not plead, be tried, or be sentenced if the defendant lacks ability to: (a) rationally consult with counsel; or (b) understand the proceedings or participate in the defense due to mental illness or deficiency." Minn. R. Crim. P. 20.01, subd. 2. And "[i]f the prosecutor, defense counsel, or the court, at any time, doubts the defendant's competency, the prosecutor or defense counsel must make a motion challenging competency, or the court on its initiative must raise the issue." *Id*., subd. 3.

> A defendant has a due process right not to be tried or convicted of a criminal charge if he or she is legally incompetent. The Supreme Court has held that a defendant is competent to stand trial in a criminal matter if he or she has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. A district court's failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. Whether a court observed procedures adequate to protect a defendant's right not to be tried or convicted while incompetent is a different question than whether the defendant is incompetent. The issue is a narrow one. It is not whether the defendant was competent to stand trial but only whether the trial court, in fulfilling its protective duty, should have conducted further inquiry.

*Bonga v. State*, 797 N.W.2d 712, 718 (Minn. 2011) (quotations and citations omitted).

In determining whether a defendant's mental condition renders him incompetent, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior

medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required." *Id*. at 719 (quotation omitted).

In this case, Hodges had a competency evaluation. The assessor opined that he was competent, and the district court determined that he was competent. Hodges did not challenge the competency determination. And Hodges did not subsequently raise his competency as an issue. Prior to pleading guilty, Hodges stated that he consulted with his attorney, understood the rights he was giving up, and was thinking clearly. There is nothing in the record to suggest that Hodges acted irrationally or that there was something unusual about his demeanor at the plea or sentencing hearings. And Hodges does not identify anything that happened in district court that should have triggered a sua sponte competency inquiry under *Bonga*. The district court did not violate Hodges's right to due process by failing to conduct further inquiry regarding his competency.

**III.**

Hodges argues that because the district court "reviewed photographs of the victim's injuries that were presented by the prosecutor, but deliberately withheld from the court record . . . the sentencing decision in this case was based on evidence that was not placed in the record [and] appellate review is frustrated." Hodges contends that his "sentence should be modified to the maximum appropriate sentence, given the lack of an appropriate record: the presumptive sentence under the guidelines."

"The [district] court is in a best position to weigh the various sentencing options and therefore is granted broad discretion in sentencing." *Massey v. State*, 352 N.W.2d 487, 489 (Minn. App. 1984). Appellate courts "generally will not interfere with

10

sentences that are within the presumptive sentence range" and will "modify a sentence that is within the presumptive sentence range" only when there are "compelling circumstances." *State v. Freyer*, 328 N.W.2d 140, 142 (Minn. 1982). The district court is not required to state its reasons to support a presumptive sentence under the sentencing guidelines. *Townsend v. State*, 834 N.W.2d 736, 740 (Minn. 2013).

Because Hodges's sentence was within the presumptive guidelines range and the district court therefore was not required to state its reasons for the sentence, any error resulting from the district court's failure to include the photos in the record is harmless. *See* Minn. R. Crim. P. 31.01 (stating that harmless error "that does not affect substantial rights must be disregarded"). And because Hodges has not shown compelling circumstances that justify sentence modification, he is not entitled to relief.

**IV.**

In his pro se supplemental brief, Hodges argues that the district court erred by failing to inquire into his claims of innocence and the voluntariness of his guilty plea.[1] He also contends that his "trial counsel was part of the problem." These issues are not properly before this court because they were not raised in his postconviction petition. *See Brocks v. State*, 753 N.W.2d 672, 676 (Minn. 2008) (concluding that an issue was not properly before the supreme court because appellant "did not raise [the] issue in his

---

[1] He also argues that "the postconviction court abused its discretion when denying [his] motion to withdraw his guilty plea." We have already addressed that argument above.

petition or the memorandum of law accompanying the petition" and "the postconviction court did not consider it").  We therefore do not address them.

**Affirmed.**